1
2

                    IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLUMBIA

3

ACCURACY IN MEDIA, INC. et al,

4
                                              CV Action
            Plaintiff,                        No. 1:14-cv-01589

5
        vs.                                   Washington, DC
                                              March 14, 2019
6
DEPARTMENT OF DEFENSE, ET AL,

7
            Defendant.
8   _____/

9                   TRANSCRIPT OF STATUS CONFERENCE
               BEFORE THE HONORABLE DEBORAH A. ROBINSON
10                 UNITED STATES MAGISTRATE JUDGE

11

APPEARANCES:
12

For the Plaintiff:       JOHN HARRISON CLARKE
13                         1629 K Street, NW
                           Suite 300
14                         Washington, DC  20006-1631
                           (202)332-3030
15

16  For the Defendant:     TAMRA TYREE MOORE
                           U.S. DEPARTMENT OF JUSTICE
17                         1100 L Street, NW
                           Washington, DC 20005
18                         (202)305-8628

19

20

21
    Reported By:    LORRAINE T. HERMAN, RPR, CRC
22                     Official Court Reporter
                   U.S. District & Bankruptcy Courts
23                    333 Constitution Avenue, NW
                      Room 6710
24                    Washington, DC 20001

25

1       P R O C E E D I N G S

2           CLERK: (delay in commencement of recording) --

3       1589 Accuracy In Media, et al versus The Department of

4       Defense.  For the Plaintiffs is John Clark; for the defense,

5       Tamra Moore.

6           THE COURT:   Good afternoon to both of you.  This

7       matter is on the calendar for a status hearing.  I thought

8       it prudent to schedule a status hearing given the length of

9       time that the motions had been pending at the time of the

10      referral, which, as you know, is a very recent one.

11          I think it would be helpful if each of you took

12      some time to discuss the background.  Although I do believe

13      it is evident from a reading of the complaint, it would

14      still be useful to hear you on the record.  Perhaps a

15      greater concern is with respect to the status, including

16      whether or not it is still the case that plaintiff requires

17      or wishes to propound an interrogatory.  I note that that

18      motion is separately docketed, although the document itself

19      is a part of the cross-motion in opposition.

20          If there is anything else that you believe the

21      Court needs to know before undertaking a detailed review of

22      the parties' written submissions?  I will have you address

23      that as well.

24          So we will begin with counsel for plaintiff.

25          MR. CLARKE:   Thank you, Your Honor.  I don't have

1    anything in addition.  I do want to point out to the Court

2    and I have spoken with Ms. Moore about that, sadly one of

3    our plaintiffs -- we have a total of seven plaintiffs -- one

4    of them passed away.

5                THE COURT:   We are certainly sorry to hear.

6                MR. CLARKE:   So I think the way to address that is

7    just apprise the Court.  By way of praecipe, we have sort of

8    agreed there is no need to amend the complaint and there

9    will be no substitution for that.  If that's all right with

10   the Court.

11               THE COURT:   I believe that will be acceptable.

12   You are certainly free to respond, Ms. Moore, when we hear

13   from you.

14               Please continue, thank you.

15               MR. CLARKE:   Yes, Your Honor.  By way of

16   background, you know, this case has been pending as the

17   Court knows since 2014, and we are -- the lead defendant is

18   the U.S. Department of Justice.  What we are most interested

19   in is those records of the initial orders that went out, as

20   is pretty apparent by the pleadings, by the dispositive

21   motions.

22               THE COURT:   May I interrupt to ask whether there

23   have been any further releases of records since the first of

24   the dispositive motions were filed?

25               MR. CLARKE:   I think -- I believe the answer is,

1   No.  No, there have not.  Actually, there may have been.

2   The Department of State's videos may have been released

3   after the dispositive motions were filed; is that accurate?

4            MS. MOORE:   I think it was our dispositive motion.

5            THE COURT:   I am concerned that both of you are

6   not going to be recorded because of the way our software

7   operates.  So I will suggest that you finish, Mr. Clarke,

8   since you are at the podium, and then I will hear your

9   response, Ms. Moore.

10            MR. CLARKE:   Very well.

11            I believe, perhaps, that it was not.  That the

12   recordings, the video recordings of the attack, which was

13   requested from the State Department, was produced as the

14   briefing progressed.

15            THE COURT:   Do you agree that further production

16   or the further release should be addressed in writing; so at

17   the time the Court actively considers the pending motions,

18   it will be clear that the matter is resolved as to at least

19   one request?

20            MR. CLARKE:   I do.  I do, Your Honor.

21            THE COURT:   Is there anything else that has

22   changed regarding the status?

23            MR. CLARKE:   No, not to my knowledge.  No, Your

24   Honor.

25            THE COURT:   To what extent have the parties had a

1    recent opportunity to meet and confer regarding the

2    plaintiff's discovery request ECF number 73?

3              MR. CLARKE:   We have not discussed that, although,

4    of course, the defendant Department of Defense is adamantly

5    opposed to that.

6              THE COURT:   At any point from the inception of the

7    case through the briefing, through the filing of the first

8    dispositive motion, did any -- I will use the term any

9    informal exchanges of documents or answers to written

10   questions take place?

11             MR. CLARKE:   No, Your Honor.

12             THE COURT:   Clearly, the record does not reflect

13   that discovery occurred, nor would I expect that it would.

14   I simply want to know, was there any agreement between

15   counsel at any point that's not reflected in any ECF entry

16   with respect to either interrogatories or other forms of

17   discovery?

18             MR. CLARKE:   No, Your Honor.

19             THE COURT:   Now, while you are at the podium,

20   Mr. Clarke, if you wish to briefly address the motion for

21   leave to propound an interrogatory, I will hear you.

22             MR. CLARKE:   Yes, Your Honor.  The government has

23   for over the course of six Congressional probes represented

24   to Congress and the American people that it had ordered a

25   response to the Benghazi attacks expeditiously.  They

1    eventually -- initially they said that the government said

2    or the Department of Defense said it was sometime between 6

3    and 8 when they made those orders, 6 p.m. and 8 p.m. on

4    September 11.

5            So we asked for those and I think it is pretty

6    apparent that they had not reviewed their records, if they

7    are giving a range of time when those first orders were

8    issued.  And then, eventually, in the last Congressional

9    probe was the select committee.  In that, Mr. Panetta

10   testified that it was given sometime before a particular

11   email went out, which was at 7:19 p.m.  And Mr. Panetta also

12   testified that once those orders were given, they were typed

13   out.  Typed up and distributed that way.

14           The first order that we have is 3 a.m. the next

15   day.  That's 12 hours after the onset of the hostilities and

16   it's 10 hours after the Department of Defense said that they

17   gave the order.

18           Now, we don't believe that that is accurate, that

19   that can possibly be accurate, that orders to respond could

20   be given out to assets worldwide without a single written

21   record of that; so that is sort of the basis of our

22   interrogatory, which asks for all communications given

23   through, I believe it was midnight of that night.  Again, it

24   is 10 hours -- 12 hours after the onset of activities and 10

25   hours after they said that the initial order was made.

1          THE COURT:   Now, the Court's question in the

2    context of FOIA litigation is invariably, Why is the

3    discovery needed to permit the requesting party to either --

4    to oppose the agency's motion?

5          MR. CLARKE:   Well, I think that in the vast

6    majority of cases where discovery is permitted it goes to

7    the search.  I don't think that is an exclusive

8    justification for discovery is only the search.  But in this

9    case, it goes to -- I think it's highly relevant and

10   certainly of very important public interest as to the

11   response, that is the communications after the notification

12   of the onset of the attacks.

13          In addition, in this case, it also goes to the

14   search because the defendant has said that the reason that

15   they have not provided it is not because they missed it in

16   the search but rather, unequivocally, because the records do

17   not exist.  We don't think that that can possibly be the

18   case.  They were either disingenuous to the American people

19   and to Congress over the course of those six investigations

20   or there is a record of their communication.

21          Again, 10 hours of silence or no record whatsoever

22   notwithstanding their having said that they gave the order

23   to respond not later than 7:19 p.m.

24          THE COURT:   Now, what is the nexus between the

25   information that you seek through the interrogatory and your

1    opposition on behalf of your clients to the defendant's

2    motion for summary judgment?

3              MR. CLARKE:   Well, they said that they have --

4              THE COURT:   The question put another way is, Why

5    do you need that answer to support your option?  You filed

6    the opposition already.

7              MR. CLARKE:   Yes.

8              THE COURT:   The record so reflects -- I don't want

9    to delay you by trying to find the ECF number of it, but we

10   recognize that you did file an opposition to the defendant's

11   motion.

12             MR. CLARKE:   Yes, Your Honor.

13             THE COURT:   Am I correct?

14             MR. CLARKE:   Yes.

15             THE COURT:   So what then is the need for service

16   of the interrogatory?

17             MR. CLARKE:  To challenge the adequacy of the

18   search.  It's Docket No. 71 but, again, we suggest that the

19   search could not have possibly been adequate and that their

20   excuse or their reason for absence of records of that

21   10-hour period, that none exist is clearly -- it has to be

22   false.

23             THE COURT:   Very well.  You may continue.

24             MR. CLARKE:   I really have nothing further to add,

25   Your Honor, unless the Court has other questions.

1          THE COURT:   I do have one follow-up question

2     regarding the interrogatory.  Have you -- to what extent

3     have you and Ms. Moore or other counsel for the defendants

4     sought to resolve this matter through an effort to meet and

5     confer?

6          MR. CLARKE:   We have not, Your Honor, with the

7     exception of we have spoken briefly on an occasion after I

8     filed this interrogatory and the Department of Defense is

9     adamant or opposes it.  So I suppose you could say that we

10     tried to, informally, resolve it and we did not get it.  And

11     we did have a number of conference calls with the Department

12     of Defense and with counsel and myself regarding the absence

13     of these records -- absence of a record of any record of the

14     response for that 10-hour period.

15          THE COURT:   Now, what do you propose logistically

16     should the Court grant your motion for leave to propound an

17     interrogatory?

18          MR. CLARKE:   I would suggest -- ask that the Court

19     give the defendant whatever time it needs.  I would suggest

20     that 30 days would be enough.  Then after that, supplemental

21     briefing, after they answer or after the response to the

22     interrogatory.

23          THE COURT:   Would that supplemental briefing, in

24     your view, begin with supplemental briefing of your

25     opposition to the defendant's motion?

1          MR. CLARKE:   Yes, Your Honor.  But only in so far

2     as the Department of Defense there are only a total of four

3     defendants in this matter.  I think only that one, only the

4     Department of Defense.

5          THE COURT:   Am I to conclude then that there is no

6     discovery you seek from any other defendant?

7          MR. CLARKE:   That is correct, Your Honor.

8          THE COURT:   In other words, not the Department of

9     State nor the Department of Justice?

10          MR. CLARKE:   Or the CIA.

11          THE COURT:   Or the CIA?

12          MR. CLARKE:   Yes.

13          THE COURT:   Very well.  Thank you very much,

14     Mr. Clarke.

15          MR. CLARKE:   Thank you, Your Honor.

16          THE COURT:   Ms. Moore, good afternoon.

17          MS. MOORE:   Good afternoon, Your Honor.  As you

18     noted and as counsel for plaintiffs has noted, this case has

19     been pending since 2014.  In the course of that time, a

20     former colleague of mine has left and I have substituted in

21     for her.  As you noted, Your Honor, I think that the one

22     remaining issue here is, I assume -- although I don't

23     personally think that it is an outstanding issue -- is

24     plaintiff's motion to propound discovery.

25          Plaintiff's counsel, as you may note from the

1    docket, there had been -- we sought extensions of time to

2    continue to try to work on resolving the issues in this case

3    to see if we could continue to narrow them such that we

4    could either resolve it totally and therefore would not need

5    to be briefing summary judgment or to narrow whatever issues

6    remain and brief those.

7            We worked diligently over the course of, I

8    believe, a year and a half to do that, which is why it took

9    as long as it did to file the cross-motions for summary

10   judgment.  As Your Honor noted, plaintiffs did, in fact,

11   oppose our motion for summary judgment without asking for

12   discovery or without stating that they couldn't oppose our

13   motion without it.

14           And the reason -- I'm sorry.  I apologize that I

15   am not prepared to argue what arguments we set forth in

16   their motion to propound discovery.  I know there is case

17   law in there that I can't think off the top of my head.  But

18   there is a presumption against discovery in FOIA cases, the

19   fact that plaintiffs think and suspect there may be a

20   document out there is not adequate to suggest that discovery

21   is warranted in a FOIA case.

22           To the extent that they believe that the search

23   was inadequate, we have put declarations in explaining what

24   the Department of Defense did, explaining why they do, in

25   fact, have the initial written orders; and that when there

1    is an attack such as the one that happened on Benghazi,

2    people don't take time to write and dispatch written orders

3    in the exact moment.  The initial orders were conveyed

4    orally.  So, Your Honor, you know --

5              THE COURT:    May I interrupt to ask what you have

6    proffered or one inference from what you proffered is that

7    there are no documents?

8              MS. MOORE:    With respect -- no, Your Honor.  We've

9    provided -- in response to that specific FOIA request, we

10   have provided the orders that -- the written orders that the

11   Department of Defense issued in response to the Benghazi

12   attack.  Plaintiff's argument is, your written orders start

13   12 hours after the attack.  There must have been a written

14   order in between the time that the attack started and the

15   time that the first written order went out.

16             Defendants have stated, and as plaintiff's counsel

17   noted, there have been six Congressional hearings.  They,

18   Congress and plaintiffs, have all of the documents that the

19   Department of Defense has with respect --

20             THE COURT:    What then is the reason that there is

21   an objection to answering the interrogatory since an

22   inference from what you have stated is that the matter has

23   already been explained?

24             MS. MOORE:   Your Honor, I --

25             THE COURT:    When I say matter, I mean the subject

1      of the interrogatory.

2                MS. MOORE:   Your Honor, I think -- well, the

3      Department of Defense objected on two grounds; one, that

4      discovery is inappropriate in a FOIA case and plaintiffs

5      haven't met their burden of demonstrating that it is, in

6      fact, needed.  And, two, the Department of Defense did

7      provide the responsive documents and that there is

8      speculation that there are additional documents out there is

9      simply that.  Speculation.

10               THE COURT:   So what is the reason that an answer

11     to the question cannot be given under oath?

12               MS. MOORE:   Your Honor, I would --

13               THE COURT:   If the question, when we distill the

14     legalese is simply, Please account for the records, for any

15     records that were not produced between the period in the

16     evening until the following morning?

17               MS. MOORE:   Well, Your Honor, I think that --

18               THE COURT:   In other words, would you state with

19     certainty there were no documents?

20               MS. MOORE:   Your Honor, I am not -- well, let me

21     just step back.  One, I wasn't prepared to argue so I

22     apologize for that and to the extent that I am not sure --

23     if you would like I can take some time to prepare and review

24     my briefing on this particular issue.

25               We would object to having to answer under oath

1     that there are no documents.  There are a couple different

2     issues.  The standard is that they conducted an inadequate

3     search.  Not that the search itself was perfect.  Two,

4     defendants did, in fact, provide documents in response to

5     their request for written orders.

6                 Plaintiffs are asking for discovery on a question

7     that is based on pure speculation.  To the extent that the

8     court was willing to hypothetically permit it here, what's

9     not -- I mean, you could see how in many different FOIA

10    cases where plaintiffs come in and speculate, Well, you gave

11    us all of these documents but we think there is something

12    else out there, that the government would be faced with

13    having to respond to discovery requests like this one in all

14    manner of cases.

15                Your Honor, to the extent that, again, that this

16    was a question about the adequacy of the Department's

17    search, we have put in declarations, we have put in

18    attachments to those declarations explaining what they

19    provided to plaintiffs.  We provided them a timeline and

20    they have not met their burden of demonstrating.  And,

21    again, I wish I could pull the quotes from my opposition

22    brief, but I don't have it handy.  They just have not met

23    their burden here demonstrating that discovery is warranted

24    in this case.

25                In fact, we have had a fully-briefed cross motions

1    for summary judgment.  They opposed our cross motions for

2    summary judgment and have argued they are entitled to

3    summary judgment based on the arguments that they have made.

4            So I apologize that I am not as prepared as I wish

5    I were to provide more response to Your Honor's question

6    about why exactly we would object, but I do know that the

7    client, the Department of Defense, we have had these

8    discussions even before we started briefing, whether we

9    would be amenable to answering interrogatories, and we said

10   no then and we responded in response to their motion in the

11   context of this briefing and we opposed it there and, you

12   know, for the same reasons we would oppose it now.

13           THE COURT:   Now, may I ask you to address, please,

14   your understanding of what records have been released other

15   than the video during the course of the --

16           MS. MOORE:   Briefing?

17           THE COURT:   -- during the course of the briefing.

18   Mr. Clarke indicated there is one video that was provided.

19           MS. MOORE:   Correct.  Plaintiffs requested the

20   actual surveillance footage from the diplomatic facility in

21   Benghazi.  Because there are ongoing criminal investigations

22   and ongoing criminal trials, neither the FBI or state were

23   willing to provide the original surveillance footage;

24   however, in the course of one of the -- I think it was the

25   last Benghazi trial that was held in this court, the

1    prosecutors in that case used some video footage that was on

2    the docket and so we made that footage available to

3    plaintiff's counsel and that resolved that dispute.

4        My reply brief --

5        THE COURT:    Is that the only document that has

6    been produced since the briefing began?

7        MS. MOORE:    Yes, Your Honor.

8        THE COURT:    The only additional record?

9        MS. MOORE:    That's correct.

10        THE COURT:    Now, you referred -- perhaps it was

11    also Mr. Clarke who referred to a period early in the case

12    in which the parties may have had some optimism that the

13    matter could be resolved.  To what extent have those

14    discussions -- and I certainly do not want you to state on

15    the record the status of any discussions that we would term

16    settlement discussions.  My question is whether there has

17    been consideration to whether additional records beyond that

18    video that was produced will be provided.

19        MS. MOORE:    No, Your Honor.  I think -- and I

20    believe plaintiff's counsel would agree, we did spend a

21    significant time trying to resolve the many issues.  There

22    were more defendants in this case, during a course of, I

23    believe it was maybe a year and a half before we briefed

24    summary judgment.  We both agreed we had gotten to a point

25    where we understood there would be no further resolution.

1    The remaining issues were once where defendants disagreed to

2    the extent some of these documents contained classified

3    information or to the existence or non-existence of certain

4    FBI reports.  We recognize that it would not be a useful --

5    it would not be useful for counsel to continue discussions

6    given that we had basically resolved everything that we

7    could.

8              THE COURT:   Are you aware of any changes in the

9    status other than the two we have already addressed?

10   Mr. Clarke informed us of the unfortunate passing of one of

11   the plaintiffs.  The two of you have indicated that a video

12   has been produced.  Is there anything else that has occurred

13   that has affected the status of the case?

14             MS. MOORE:   No, Your Honor.  Other than I just

15   stated that in plaintiff's cross motion for summary judgment

16   that they had indicated that certain -- that they were no

17   longer challenging certain issues; that's the extent too --

18   to the extent that there were any changes.  Other than that

19   there are none.

20             THE COURT:   Very well.  Thank you very much.

21   Ms. Moore, anything further?

22             MS. MOORE:   No, Your Honor.

23             THE COURT:   Very well.  Thank you very much.

24   Mr. Clarke, do you wish a reply?

25             MR. CLARKE:   Briefly, Your Honor.

1     As the government said, we did make significant

2  progress in narrowing these issues.  In so far as in what

3  has changed since the briefing, I would say only one thing,

4  more time has passed and we -- one of the issues is whether

5  or not the government need to identify the assets that it

6  could have deployed.  And I think with the passage -- we

7  have an affidavit to the effect that it would not endanger

8  or jeopardize national security to provide that information.

9  They take the contrary view, I think the fact is now it's

10 seven years since the -- or eight years, I guess, since the

11 onset of the hostilities.  And I would just say that the

12 government characterizes plaintiff's request for position as

13 speculation that there must be other documents.  I don't

14 think it can possibly be concluded that it's speculation.

15 That there is some record of an order given over a 12-hour

16 period that we are requesting.

17     That's the only thing I have to add, Your Honor.

18     THE COURT:   Now, you referred Mr. Clarke to

19 testimony during the course of various Congressional

20 committee hearings as --

21     MR. CLARKE:   Yes.

22     THE COURT:   -- as a part of -- as a part of the

23 context in which this action continues.  To what extent was

24 that question, your question which would otherwise be posed

25 in an interrogatory addressed under oath by any of the

1    witnesses during those hearings?

2            MR. CLARKE:    Mr. Panetta testified in closed door

3    and that was released, I think, about three or four months

4    before the briefing.  Something like that.  And he did

5    respond.  He did talk about when the orders were given

6    incredibly.  There really wasn't much discussion of that

7    before that; that was the sixth Congressional probe.  He

8    testified among other things that it was given by 7:19.  He

9    didn't have the exact time.  He also testified that the

10   orders were typed up.  So of course, we haven't seen those.

11           THE COURT:  Is it your understanding that the

12   records were made available to the members of the committee

13   who conducted the hearing?

14           MR. CLARKE:  It is my understanding that they

15   never asked for it.  They took the Department of Defense's

16   word on that.

17           THE COURT:    Are you aware of whether the record

18   was produced, the record to which Secretary Panetta referred

19   in any other context, in any of the other litigation,

20   whether it was the criminal matter which proceeded to trial

21   in this courthouse or any other litigation?

22           MR. CLARKE:    Not to my knowledge, Your Honor.

23   That was really the only mention of certainly a typed order.

24   I think there was, you know, over the course, at the

25   beginning of the Congressional probes, the Department of

1  Defense put out a timeline that they said that the initial

2  orders were given and arranged between six and eight, but

3  there has never been any documentation provided.  Period.

4          I also might add that the Select Committee in its

5  final report did mention that it had asked for the records

6  of the assets that were available at the time, and that's in

7  the brief, and the Department of Defense never turned it

8  over, and Mr. Gowdy let it slide and didn't subpoena them or

9  didn't press.  But he did mention that.  And he said in his

10 final report that it would be in the public interest to

11 release those records.  That, of course, is an issue before

12 the Court.

13         THE COURT:   Very well.  Thank you, very much,

14 Mr. Clarke.

15         MR. CLARKE:   Thank you, Your Honor.

16         THE COURT:   Ms. Moore.

17         MS. MOORE:   Could I just make --

18         THE COURT:   It appears you wish to respond.

19         MS. MOORE:   I'm sorry.  I will just make two quick

20 comments.  I want to be clear that there are -- I believe we

21 are talking about two separate things.  One are the written

22 orders or the written orders that were dispatched in

23 response to Benghazi.  And then one of plaintiff's other

24 requests are for the location of our military assets,

25 personnel, ships, et cetera, at the time of the attack.

1    Those were two separate requests.

2            In response to the first request for written

3    orders, we provided the written orders.  There are actually

4    written orders that were provided to plaintiffs.  They don't

5    think that those are the first written orders.  They are the

6    first written orders.  So that's one.

7            And, two, with respect to the positioning of our

8    military defense assets, planes, ships, et cetera, it is

9    true that defendants or the Department of Defense refuse to

10   close that for many other reasons in our brief and

11   declarations.  It's classified information notwithstanding

12   the amount of time that has passed.  Some of those positions

13   may, in fact, still be positions that the Department of

14   Defense use, and so I won't argue that here.  It is in our

15   briefs.  If you would like us to come back to argue the

16   matter, it's fine, but I just wanted to specify that we are

17   talking about two separate orders -- or two separate FOIA

18   requests.

19           THE COURT:   Now, you do not suggest that the

20   answer to the portion of the request having to do with the

21   orders would require the disclosure of classified

22   information, do you?

23           MS. MOORE:   I do not know.  I don't think so but I

24   don't -- I couldn't tell you that yes or no.  I could tell

25   you what I was told by agency counsel, which is that they've

1    provided the written orders.  Plaintiffs have the written

2    orders.  They have been provided.  Plaintiffs have been

3    provided a timeline and that there aren't any orders written

4    before the ones that we have already provided them; that's

5    all.  I mean, to the extent -- I would be cautious against

6    making any representations about whether something is

7    classified or not because I truly don't know.

8              THE COURT:   Very well.  Thank you very much,

9    Ms. Moore.

10             Mr. Clarke?

11             MR. CLARKE:   Your Honor, one more thing.  We are

12   assuming that these initial communications to the assets

13   were orders, but we also ask for the record of the

14   communications in addition to -- it may not be orders like

15   "get ready" or "there is an attack ongoing," that sort of

16   thing.  Both communications.  And we assume that the

17   response would be orders, but the FOIA request asks for all

18   communications to the assets.

19             THE COURT:   Very well.  Thank you very much,

20   Mr. Clarke.

21             I believe we are near the conclusion of the status

22   conference.  I would like to set a date by which you will

23   file a status report.  You have made representations on the

24   record this afternoon regarding the unfortunate passing of

25   one of the plaintiffs and the release of a video, but I

1   believe it would be important to have a written status

2   report in which the plaintiff is identified, in which you

3   refer to the agreement that -- between the parties that no

4   amendment to the complaint is needed as a consequence, that

5   there will be no substitution of anyone for that plaintiff

6   and, of course, the identification by description of the

7   video that was produced and the date on which it was

8   produced.

9              Is one week sufficient time?

10             MR. CLARKE:  Yes, Your Honor, will that be a joint

11   status report?

12             THE COURT:   Yes.  Is there any reason it cannot be

13   a joint status report, Ms. Moore?

14             MS. MOORE:   No, Your Honor.

15             THE COURT:   Is that your view as well, Mr. Clarke?

16             MR. CLARKE:   Yes, Your Honor.

17             THE COURT:   Very well.  A joint status report I

18   will suggest one week.  If you think you need longer than

19   that, that is fine.  It is believed we should have a date in

20   the ECF entries.  So one week from today is March 21st; is

21   that sufficient?

22             MR. CLARKE:   Yes, Your Honor.

23             THE COURT:   Very well.  The record of today's

24   proceedings will indicate that no later than March 21st,

25   2019, the parties will jointly file a status report in which

1    they address changes in the status from the time the

2    briefing commenced.

3            I would appreciate it if you would take some

4    additional time to confer so that if there are other changes

5    in the status, that you simply neglected to mention this

6    afternoon, you can include those as well.

7            MR. CLARKE:   Very good.

8            THE COURT:   Very well.  Is there anything further

9    at this time, Mr. Clarke?

10           MR. CLARKE:   No, Your Honor.

11           THE COURT:   Ms. Moore?

12           MS. MOORE:   No, Your Honor.

13           THE COURT:   Thank you both very much.  You may be

14   excused.

15           MR. CLARKE:   Thank you.

16           MS. MOORE:   Thank you.

17           (Proceedings concluded.)

18

19

20

21

22

23

24

25

1

2

3                           **C E R T I F I C A T E**

4

5           I, **Lorraine T. Herman, Official Court**

6  **Reporter,** certify that the foregoing is a true, correct and

7  complete transcript of the audio-recorded proceedings in

8  this matter, audio recorded on March 14, 2019, and

9  transcribed from the audio recording to the best of my

10  ability, and that said transcript has been compared with the

11  audio recording.

12

13        Dated:  8/11/20

14                              /s/_____
                                 Lorraine T. Herman
15                          Official Court Reporter
                            333 Constitution Avenue
16                          Washington, DC  20001
                            (202)354-3267
17

18

19

20

21

22

23

24

25