**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **ACCURACY IN MEDIA**, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 14-1589 (EGS/DAR) |
| **DEPARTMENT OF DEFENSE**, *et al.*, | |
| Defendants. | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO THE
MAGISTRATE'S REPORT AND RECOMMENDATION**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................... 1

BACKGROUND ................................................................................................................... 2

LEGAL STANDARD ........................................................................................................... 3

ARGUMENT ........................................................................................................................ 3

I.      The Magistrate Correctly Concluded that the Department of Defense Conducted An
        Adequate Search ....................................................................................................... 3

II.     The Magistrate Correctly Concluded that the Department of Defense Properly
        Withheld Records Related to the Positioning of Military Assets Pursuant to
        Exemption 1 .............................................................................................................. 8

III.    The Magistrate Correctly Concluded that the CIA Properly Withheld Information in
        CIA Inspector General Records .............................................................................. 13

        A.      The CIA Is Not Required To Disclose Additional Information Relating to the
                Subject Matter of the Inspector General Records ...................................... 13

        B.      Plaintiffs' Challenges to the CIA's Withholdings Are Meritless ............... 15

IV.     The Magistrate Correctly Concluded that Plaintiffs' Motion For Discovery Is
        Meritless .................................................................................................................. 17

CONCLUSION ................................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>

*ACLU v. U.S. Dep't of Defense*,
    628 F.3d 612 (D.C. Cir. 2011) ................................................................ 9, 10, 11, 12

*Am. Oversight v. U.S. Dep't of Justice*,
    401 F. Supp. 3d 16 (D.D.C. 2019), *appeal filed* Case No. 19-5257 (D.C. Cir. Sept. 30,
    2019)......................................................................................................... 7, 8, 17

*Ancient Coin Collectors Guild v. U.S. Dep't of State*,
    641 F.3d 504 (D.C. Cir. 2011) ................................................................ 4, 8

*Ass'n of Retired R.R. Workers, Inc. v. U.S.R.R. Retirement Bd.*,
    830 F.2d 331 (D.C. Cir. 1987) ................................................................ 9

*Berry Law PLLC v. Kraft Foods Grp., Inc.*,
    Case No. 13-475-RBW, 2013 WL 12061613 (Dec. 11, 2013) ................................ 17

*Brown v. District of Columbia*,
    324 F. Supp. 3d 154 (D.D.C. 2018) ................................................................ 12, 18

*Cole v. Rochford*,
    285 F. Supp. 3d 73 (D.D.C. 2018) ................................................................ 18

*Comm. for Freedom of Press v. FBI*,
    877 F.3d 399 (D.C. Cir. 2017) ................................................................ 5

*Competitive Enter. Inst. v. EPA*,
    12 F. Supp. 3d 100 (D.D.C. 2014) ................................................................ 6, 7

*Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*,
    331 F.3d 918 (D.C. Cir. 2003) ................................................................ 9, 13

*Daniel v. eBay, Inc.*,
    319 F. Supp. 3d 505 (D.D.C. 2018) ................................................................ 3

*DiBacco v. U.S. Army*,
    795 F.3d 178 (D.C. Cir. 2015) ................................................................ 7

*Ground Saucer Watch, Inc. v. CIA*,
    692 F.2d 770 (D.C. Cir. 1981) ................................................................ 4

*In re Clinton*,
    970 F.3d 357 (D.C. Cir. 2020) ................................................................ 18

*Judicial Watch, Inc. v. CIA,*
  310 F. Supp. 3d 34 (D.D.C. 2018) .................................................................. 14

*Judicial Watch, Inc. v. U.S. Dep't of Defense,*
  715 F.3d 937 (D.C. Cir. 2013) ...................................................................... 9

*Khatchadourian v. DIA,*
  453 F. Supp. 3d 54 (D.D.C. 2020) .................................................................. 18

*M.O. v. District of Columbia,*
  20 F. Supp. 3d 31 (D.D.C. 2013) .................................................................. 17

*Morley v. CIA,*
  508 F.3d 1108 (D.C. Cir. 2007) .................................................................. 9

*Oglesby v. U.S. Dep't of the Army,*
  920 F.2d 57 (D.C. Cir. 1990) ...................................................................... 3

*Ray v. Turner,*
  587 F.2d 1187 (D.C. Cir. 1978) .................................................................. 9

*Roth v. U.S. Dep't of Justice,*
  642 F.3d 1161 (D.C. Cir. 2011) .................................................................. 16

*SafeCard Servs., Inc. v. SEC,*
  926 F.2d 1197 (D.C. Cir. 1991) .............................................................. 4, 7

*Sarno v. U.S. Dep't of Justice,*
  278 F. Supp. 3d 112 (D.D.C. 2017) .............................................................. 16

*Shapiro v. U.S. Dep't of Justice,*
  893 F.3d 796 (D.C. Cir. 2018) .................................................................. 12

*Steinberg v. U.S. Dep't of Justice,*
  23 F.3d 548 (D.C. Cir. 1994) ...................................................................... 4

*Talbot v. U.S. Dep't of State,*
  315 F. Supp. 3d 355 (D.D.C. 2018) .............................................................. 14

*Tax Analysts v. IRS,*
  410 F.3d 715 (D.C. Cir. 2005) .................................................................. 19

*Taylor v. District of Columbia,*
  205 F. Supp. 3d 75 (D.D.C. 2016) .......................................................... 12, 18

*Valencia-Lucena v. U.S. Coast Guard*,
    180 F.3d 321 (D.C. Cir. 1999) ............................................................ 4

*Weisberg v. U.S. Dep't of Justice*,
    745 F.2d 1476 (D.C. Cir. 1984) ........................................................... 4

## Statutes

50 U.S.C. § 431 ......................................................................................... 13

50 U.S.C. § 552(b)(1)(A) .......................................................................... 9

50 U.S.C. § 3141 ........................................................................... 13, 14, 16

## Rules

Fed. R. Civ. P. 72(b) ................................................................................. 3

District of Columbia Local Civ. R. 72.3(b) ............................................... 3

## Regulation

Exec. Order 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009) ............................ 9

## INTRODUCTION

This case arises out of numerous requests filed under the Freedom of Information Act ("FOIA") seeking various records relating to the September 11, 2012 attack on the United States diplomatic facility in Benghazi, Libya. Over the course of several years, the United States Department of Defense ("DOD"), the United States Department of State ("State"), the Federal Bureau of Investigation, a component of the United States Department of Justice ("FBI"), and the Central Intelligence Agency ("CIA") (collectively "Defendants") worked with Plaintiffs to narrow the scope of certain requests, conducted searches for responsive records, and released non-exempt records or portions thereof.

After the parties both moved for summary judgment (and Plaintiffs moved to propound an interrogatory to DOD), this case was assigned to Magistrate Judge Deborah Robinson ("the magistrate"). At that point, the issues remaining to be decided were (1) whether DOD conducted an adequate search for certain records, (2) whether DOD properly withheld classified maps identifying the positions of military assets in the Mediterranean; (3) whether the CIA had properly redacted information contained in records relating to an investigation by the CIA Inspector General; (4) whether the FBI had properly issued a *Glomar* response regarding Plaintiffs' requests for records relating to alleged FBI interviews; and (5) whether to grant or deny Plaintiffs' motion to propound an interrogatory. *See* Magistrate's Report and Recommendation ("R&R"), at 2-3, ECF No. 83.

The magistrate recommended that summary judgment be awarded to Defendants on all issues except with respect to the FBI's *Glomar* response, and also recommended that Plaintiffs' motion to propound an interrogatory be denied. After the report and recommendation was issued, the FBI informed the Court that it would abandon its prior *Glomar* assertion and instead process the relevant documents to the extent they exist and are subject to FOIA, and all Defendants informed the Court that they did not intend to object to the report and recommendation. *See* ECF No. 86. Plaintiffs filed objections regarding the four issues for which the magistrate had ruled in favor of Defendants. *See* Plaintiffs' Objections ("Pls. Obj."), ECF No. 87.

Except for the issue of FBI's *Glomar* response, the Court should adopt the magistrate's report and recommendation in all respects.[1] In a careful and detailed analysis, the magistrate explained why the government was entitled to summary judgment on the remaining issues, and also provided numerous reasons why Plaintiffs' motion for discovery should be denied.

Specifically, the magistrate correctly concluded that DOD is entitled to summary judgment with respect to its search because it has submitted a detailed declaration explaining its search process, which entitles DOD to a presumption of good faith that Plaintiffs cannot overcome. The magistrate also correctly determined that DOD is entitled to summary judgment regarding its withholding of maps that reflect the disposition of military assets in the Mediterranean at the time of the Benghazi attack. Those maps remain appropriately classified and thus were properly withheld. Likewise, the magistrate correctly concluded that the CIA had properly invoked several FOIA exemptions to redact sensitive information contained in records relating to Benghazi-related files of the CIA Inspector General. Finally, the magistrate properly recommended the denial of Plaintiffs' motion to propound an interrogatory to DOD on multiple grounds, including because Plaintiffs have not established bad faith and because their proposed discovery has nothing to do with DOD's search process.

As described below, Plaintiffs provide no reason to second-guess any of the magistrate's recommendations. Accordingly, the Court should adopt the magistrate's recommendations on all issues except with respect to the FBI's *Glomar* response.

## BACKGROUND

Plaintiffs filed their complaint on September 19, 2014. ECF No. 1. Defendants searched for and processed responsive records to Plaintiffs' numerous FOIA requests over the following several years. After completing that processing, Defendants filed a motion for summary judgment on May 10, 2018. ECF No. 68. Plaintiffs cross-moved for summary judgment on June 25, 2018, ECF No. 71, and on the same day also filed a motion for leave to propound an interrogatory to

---

[1] The FBI has completed its search for the records previously covered by its *Glomar* response, but has not yet processed them.

DOD, ECF No. 73. The Court referred the case to a magistrate judge on January 7, 2019, *see* Jan.

7, 2019 Minute Order, and it was then assigned to Magistrate Judge Deborah Robinson.

Magistrate Judge Robinson issued her Report and Recommendation on August 27, 2020.

*See* R&R, ECF No. 83. She recommended that summary judgment be awarded to Defendants with

respect to (1) the adequacy of DOD's search for responsive records, (2) DOD's withholding of

classified maps pursuant to FOIA Exemption 1, and (3) the CIA's redaction of information con-

tained in CIA Inspector General records pursuant to several FOIA exemptions. The magistrate also

recommended (4) that Plaintiffs' motion to propound an interrogatory be denied. *See id.* at 33.

Plaintiffs filed objections to the magistrate's report and recommendation on September 23,

2020. *See* Pls. Obj., ECF No. 87. Plaintiffs objected to each of the four recommendations noted

above.

## LEGAL STANDARD

After a magistrate judge has issued a report and recommendation on a dispositive motion,

the parties may file written objections and responses. Fed. R. Civ. P. 72(b). The Federal Rules

provide that a district court "must determine de novo any part of the magistrate judge's disposition

that has been properly objected to" and "may accept, reject, or modify the recommended disposi-

tion." *Id.* at 72(b)(3). "Proper objections 'shall specifically identify the portions of the proposed

findings and recommendations to which objection is made and the basis for objection.'" *Daniel v.*

*eBay, Inc.*, 319 F. Supp. 3d 505, 509 (D.D.C. 2018) (quoting Local Civ. R. 72.3(b)).

## ARGUMENT

I. **The Magistrate Correctly Concluded that the Department of Defense Conducted An Adequate Search**

FOIA requires an agency to undertake a "good faith effort to conduct a search for the re-

quested records, using methods which can be reasonably expected to produce the information re-

quested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). In determining

whether an agency is entitled to summary judgment on the adequacy of the search, "a court may

rely on a reasonably detailed affidavit, setting forth the search terms and the type of search per-

formed, and averring that all files likely to contain responsive materials (if such records exist) were

searched." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)) (quotation marks and brackets omitted). If an agency submits an appropriate affidavit, it is "accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)). That is so because "[t]he question is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

Plaintiffs challenge the adequacy of DOD's search for records relating to initial orders and communications sent soon after the onset of the attack in Benghazi.[2] *See* Herrington Decl., ¶ 6, ECF No. 68-4 (describing relevant FOIA requests). In response to Plaintiffs' FOIA requests, DOD produced (among other records) a redacted copy of an order that was sent at 3:00 a.m. on September 12.[3] *Id.* ¶ 16. DOD explained that this "EXORD" was "the initial written order directing EUCOM to execute an action in response to the September 11, 2012 attack on the United States mission in Benghazi, Libya." *Id.*

During briefing before the magistrate, Plaintiffs asserted that DOD must possess additional responsive records relating to initial orders that were sent before the 3:00 a.m. EXORD. *See* R&R, at 13 ("Plaintiffs insist that there must have been earlier written orders and communications[.]"); Pls. Mtn. for Summ. J. ("Pls. MSJ"), at 6, ECF No. 71 ("A review of the record in the matter reveals the existence of a number of records that the DOD claims do not exist."). The magistrate

---

[2] In the briefing before the magistrate, Plaintiffs also challenged DOD's search for records relating to former Libyan dictator Muammar Gadaffi, but Plaintiffs expressly abandoned that challenge in their objections. *See* Pls. Obj., at 22 n.28, ECF No. 87.

[3] Unless otherwise specified, all times mentioned in this brief correspond to Eastern Daylight Time. The referenced order has a timestamp of "0700 Zulu," which is equivalent to 3:00 a.m. Eastern Daylight Time.

rejected that argument and recommended that DOD be granted summary judgment with respect to its search. R&R, at 9-15. Specifically, the magistrate determined that DOD had provided a detailed declaration describing the parameters of DOD's search, that this declaration was entitled to a presumption of good faith, and that Plaintiffs' arguments against the adequacy of DOD's search amounted to nothing more than "purely speculative claims about the existence and discoverability of other documents." *Id.* at 9-11 (quoting *Reporters. Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017)).

Plaintiffs concede that they cannot identify any specific aspects of DOD's search that are problematic, *see* Pls. MSJ, at 4 ("[P]laintiffs are not in a position to dispute the particulars of the DOD's search[.]"). Instead, Plaintiffs seek to challenge the adequacy of the search by suggesting that DOD's "official timeline of events is doubtful." R&R, at 14; *see* Pls. Obj., at 9-18. By this, Plaintiffs' apparent strategy is to sow doubt about public statements from certain DOD officials – whom Plaintiffs do not allege were involved in the search process – as a backdoor way to cast doubt on the search itself. *See* Pls. Obj., at 9-18, 22-25. This approach was correctly rejected by the magistrate, *see* R&R, at 10-11, 13-15, and it fares no better now.

Specifically, Plaintiffs assert that if the 3:00 a.m. EXORD was the first order issued in response to the attack, then earlier DOD statements about when the first order had been transmitted must be false. *See, e.g.*, Pls. Obj., at 11 (stating that DOD had previously maintained that the first order was transmitted at 8:39 p.m. on September 11 rather than 3:00 a.m. on September 12). Plaintiffs claim that this purported discrepancy is "evidence of bad faith," *id.* at 16, and accuse DOD of trying "to cover up the truth of when the order had actually been given," *id.* at 15; *see also id.* at 16 ("DOD deceived Congress and the public about when the order to deploy had been relayed, by six hours.").

The problem with this argument is that Plaintiffs have *not* identified any actual discrepancy with respect to DOD's initial orders. As DOD explained in its declaration, the EXORD was the first *written* order, but DOD officials relayed earlier *verbal* orders. *See* Herrington Decl., ¶¶ 16-22. That explanation is consistent with a timeline of events that DOD had provided to Congress in

response to its inquiries about Benghazi and that DOD also produced to Plaintiffs. *See id.* ¶ 18; *see also* ECF No. 87-1, at 1 (copy of produced timeline). For example, the timeline notes that between 6:00 p.m. and 8:00 p.m. on September 11, Secretary Panetta had "provide[d] verbal authorization" for various military units to prepare to deploy. ECF No. 87-1, at 1. The timeline further states that "[d]uring this period, actions are verbally conveyed from the Pentagon to the affected Combatant Commands in order to expedite movement of forces upon receipt of formal authorization." *Id.* The timeline also indicates that the National Military Command Center initiated a "conference call" around 8:30 p.m., and that shortly thereafter (at 8:39 p.m. and 8:53 p.m.) it "transmit[ted] formal authorization" to move certain military units. *Id.* at 2. Accordingly, the magistrate correctly determined that there was no discrepancy in DOD statements indicating bad faith. *See* R&R, at 14 ("Secretary Panetta's testimony and the timeline of communications provided by the DoD to Plaintiffs all support the idea that no written records or communications were created prior to the 3:00 a.m. EXORD."); *see also* Herrington Decl., ¶ 22 ("The EXORD . . . is the first *written* order – there are no others.").

Plaintiffs also try to establish bad faith by insinuating that former Secretary Panetta and other DOD officials cannot be trusted. *See, e.g.*, Pls. Obj., at 12 (opining that Secretary Panetta's actions "seem contradictory" and that his "memory lapses" "seem excessive"); *id.* at 12-13 (suggesting Secretary Panetta incorrectly testified about the amount of time it took him to drive from the Pentagon to the White House); *id.* at 17 ("For Panetta's version of these events to be true, military leaders would have to have been lying to the Secretary of Defense, or be wholly incompetent."). Not only are these attacks vague and unsubstantiated, they are also legally irrelevant to this FOIA case because they have nothing to do with DOD's *search*. *See, e.g.*, *Competitive Enter. Inst. v. EPA*, 12 F. Supp. 3d 100, 110 (D.D.C. 2014) (rejecting challenge to search that amounted to "essentially an *ad hominen* attack" on agency officials that "never specifically challenges the actual scope or method of [the agency's] search for records"); *Am. Oversight v. U.S. Dep't of Justice*, 401 F. Supp. 3d 16, 37 (D.D.C. 2019) ("Hazy allegations of administrative malfeasance may sound incriminating, but the Court requires concrete, specific challenges to the sufficiency of

[an agency's] search in order to deny the agency summary judgment on this point." (quoting *Competitive Enter. Inst.*, 12 F. Supp. 3d at 111)), *appeal filed* Case No. 19-5257 (D.C. Cir. Sept. 30, 2019).

The magistrate thus correctly afforded "little significance" to Plaintiffs' attempt to cast doubt on DOD's version of events, noting that the more important point was that Plaintiffs had failed to carry their legal burden of "point[ing] to concrete evidence of the existence of particular records that the DoD failed to produce." R&R, at 14 (citing *SafeCard Servs.*, 926 F.2d at 1200). The magistrate reviewed Plaintiffs' papers and found only two allegations of records that Plaintiffs claimed must exist, but determined that those allegations "amount[ed] to 'purely speculative claims about the existence and discoverability of other documents.'" *Id.* at 14-15 (quoting *SafeCard Servs.*, 926 F.2d at 1200).

Plaintiffs respond to this point by referencing four additional responsive records that Plaintiffs hypothesize might be in DOD's possession. *See* Pls. Obj., at 22-25. But three of those purported records relate to orders given before the 3:00 a.m. EXORD, *see id.* at 22-23, and Plaintiffs give no reason to believe those orders (if they exist) were reduced to writing before 3:00 a.m. *See* Herrington Decl., ¶ 22 (noting that the 3:00 a.m. EXORD was the first written order); *see also DiBacco v. U.S. Army*, 795 F.3d 178, 191 (D.C. Cir. 2015) (rejecting challenge to adequacy of search where plaintiff cited newspaper articles that did not conclusively prove the existence of additional documents). Indeed, Plaintiffs themselves now state that "Plaintiffs agree . . . that the first order was issued at 3:00 a.m." Pls. Obj., at 11.

The fourth record is known as a "PINNACLE OPREP-3 Report." Pls. Obj., at 23. DOD has described its search for that record, *see* Herrington Decl., ¶¶ 8-9, 23-24, and Plaintiffs identified no defect in that search process in either their motion for summary judgment or in their objections. But more importantly, it would be irrelevant if Plaintiffs could identify a handful of documents that they think might exist, because an agency's search is not judged by "the fruits of the search," but rather based on "the appropriateness of the methods used to carry out the search."

*Ancient Coin Collectors*, 641 F.3d at 514; *see also* R&R, at 12 n.6 ("[T]he existence or non-existence of a 'PINNACLE OPREP-3' Report . . . is beside the point and does not overcome a presumption of good faith here."). Furthermore, as the magistrate noted, Plaintiffs' challenge to the search process also fails because "even if some records of earlier initial orders or communications exist, there is no evidence that the DoD failed to search for them in good faith." R&R, at 15; *see Am. Oversight*, 401 F. Supp. 3d at 37 (requiring Plaintiffs to challenge the *search process* to avoid court granting summary judgment to agency).

"Rare is the case that compels a court to cast a skeptical eye on an agency's FOIA declarations," *Am. Oversight*, 401 F. Supp. 3d at 26, and Plaintiffs provide no reason to think this is one of those unusual cases. To the contrary, like in many FOIA cases, the agency has provided a reasonably detailed declaration about its search process that is entitled to a presumption of good faith, and Plaintiffs offer no credible reason to overcome that presumption. Consequently, DOD is entitled to summary judgment with respect to its search.

## II. The Magistrate Correctly Concluded that the Department of Defense Properly Withheld Records Related to the Positioning of Military Assets Pursuant to Exemption 1

One of Plaintiffs' FOIA requests sought "[m]aps depicting all assets that could have been dispatched to the Benghazi mission or the CIA annex facility on September 11th and 12th, 2012, regardless of [sic] such maps were created before or after September 11, 2012." *See* Malloy Decl., Ex. A, at 1, ECF No. 69-1. In a letter to Plaintiffs, DOD explained that it had identified twelve pages of records responsive to this request that DOD had withheld in full pursuant to FOIA Exemption 1. *See* Malloy Decl., Ex. B. The magistrate determined that DOD properly withheld these maps pursuant to Exemption 1, a contention that Plaintiffs challenge in their objections. *See* R&R, at 15-17; Pls. Obj., at 18-22.

FOIA Exemption 1 protects from disclosure information that is "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" and is "in fact properly classified pursuant to such Executive Order." 5 U.S.C.

8

§ 552(b)(1)(A). The current executive order governing classification is Executive Order 13,526, which allows an agency to withhold information that an official with original classification authority has determined to be classified because its "unauthorized disclosure could reasonably be expected to cause identifiable or describable damage to the national security[.]" Exec. Order 13,526 § 1.4, 75 Fed. Reg. 707, 709 (Dec. 29, 2009). The information must also "pertain[] to" one of the categories of information specified in the Executive Order, which include "military plans, weapons systems, or operations," "foreign relations or foreign activities of the United States," and "vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security." *Id.* § 1.4(a), (d), (g); *see also Judicial Watch, Inc. v. U.S. Dep't of Defense*, 715 F.3d 937, 941 (D.C. Cir. 2013) ("[P]ertains is not a very demanding verb.").

Although courts conduct *de novo* review of an agency's withholding of information responsive to a FOIA request, "de novo review in FOIA cases is not everywhere alike." *Ass'n of Retired R.R. Workers, Inc. v. U.S.R.R. Retirement Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987). When an agency's determination implicates national security concerns, courts recognize that "the executive ha[s] unique insights into what adverse [e]ffects might occur as a result of public disclosure of a particular classified record." *Ray v. Turner*, 587 F.2d 1187, 1194 (D.C. Cir. 1978) (quotation marks omitted); *see also Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 926-27 (D.C. Cir. 2003) (noting that information withheld pursuant to Exemption 1 often "implicat[es] national security, a uniquely executive purview"). Accordingly, in the national security context, a court "must accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record." *ACLU v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011); *see also Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007) ("[T]he text of Exemption 1 itself suggests that little proof or explanation is required beyond a plausible assertion that information is properly classified."). Thus, courts in this circuit "have consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review." *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927.

Following these well-established principles, the magistrate correctly determined that DOD properly withheld the challenged records in full pursuant to Exemption 1 because the information contained in them was lawfully classified and pertained to three categories of information classifiable under Executive Order 13,526. *See* R&R, at 15-17; Malloy Decl., ¶ 10. As DOD explained, "[t]he 12 pages withheld by Joint Staff contain the force posture of the Department of Defense for the European Command, Central Command, and Africa Command areas of responsibility as well as the force posture of Special Operation forces worldwide during the relevant timeframe in September 2012." Malloy Decl., ¶ 9. This information remains "sensitive and classified at the Secret level, because the release of this information reasonably could be expected to cause serious damage to the national security." *Id.* ¶ 11.

Plaintiffs do not dispute that these records had originally been properly classified, but they nonetheless claim that the records should now be released because the information they contain (1) has already become public, and (2) no longer poses a threat to national security. *See* Pls. Obj. at 20-22. Neither argument has merit.

As the magistrate correctly noted, the D.C. Circuit "has repeatedly rejected the argument that the government's decision to disclose some information prevents the government from withholding other information about the same subject." R&R, at 17 (quoting *ACLU*, 628 F.3d at 625). Instead, for a FOIA plaintiff to force disclosure of classified information on the ground that it is already public, the plaintiff must establish that three strict criteria are satisfied: "(1) the information requested must be as specific as the information previously released; (2) the information requested must match the information previously disclosed; and (3) the information requested must already have been made public through an official and documented disclosure." *ACLU*, 628 F.3d at 620-21.

To support their position that DOD's maps should be disclosed, Plaintiffs identify two other maps in the public domain that Plaintiffs suggest contain similar information. *See* Pls. Obj., at 20-21. But these two maps – one published by the Congressional Research Service ("CRS") and one created by Plaintiffs themselves – come nowhere close to satisfying the D.C. Circuit's standard

for compelled production of classified material. A cursory comparison of the maps demonstrates why this is so. As explained in the Malloy declaration, the maps withheld by DOD "contain the numbers and locations of ships, submarines, response forces, and aircraft surrounding Benghazi Libya" around the time of the attack, as well as "the numbers of military personnel located in particular countries during that time" and "the transit time required for each available asset to reach Benghazi." Malloy Decl., ¶ 9. By contrast, the CRS map (*see* Clarke Decl., Ex. 4, at Bates 50, ECF No. 71-1) contains only the distances between Benghazi and various places in the Mediterranean region, and does not contain information about the types and number of military assets in the region, or the time it would take for those units to travel to Benghazi. Therefore, the fact that the CRS map is public does not require the disclosure of the DOD maps, because "the information requested" does not "match the information previously disclosed." *ACLU*, 628 F.3d at 620.

Nor can Plaintiffs compel production by proffering their own homemade map. *See* Clarke Decl., Ex. 12, at Bates 113, ECF No. 71-1. Like the CRS map, Plaintiffs' map does not include the same information as the DOD maps because it contains Plaintiffs' estimates (rather than DOD's estimates) of travel times to Benghazi from various Mediterranean locations and does not include the official positions of the military assets noted in DOD's maps. Of course, the map created by Plaintiffs also suffers from the obvious defect that it is not "an official and documented disclosure." *See ACLU*, 628 F.3d at 621.

Plaintiffs' statement that "[t]he Congressional record on this issue is replete with discussions of the assets, travel times, and available personnel and aircraft, and this information has been extensively reported by the media," Pls. Obj., at 21, is of no moment. Plaintiffs in no way try to show that this alleged information is "as specific" or "match[es]" the information contained in DOD's classified maps. *See ACLU*, 628 F.3d at 620.[4]

---

[4] The magistrate also noted that Plaintiffs had not challenged DOD's segregability analysis with respect to the maps, but the magistrate conducted a *sua sponte* consideration of segregability and "[f]ound that the DoD has fulfilled this requirement because of the classified nature of the map and the fact that a map is not as readily segregable as other kinds of records." R&R, at 17-18 n.10. Plaintiffs do not contest this point in their objections.

Plaintiffs' second argument – that disclosing the positions of military assets throughout the Mediterranean region at the time of the Benghazi attack would no longer pose a risk to national security – also fails. *See* Pls. Obj., at 21-22. Plaintiffs try to support their contention with an affidavit from a retired military officer (Admiral Lyons) who opines that releasing the maps would no longer harm national security. *Id.* But Plaintiffs' argument can be immediately rejected because the magistrate "recommend[ed] striking Admiral Lyons' opinions because they are not based on personal knowledge and are not relevant," R&R, at 12 n.5, 17 n.9, and Plaintiffs have not contested that point. Pls. Obj., at 21-22; *see Brown v. District of Columbia*, 324 F. Supp. 3d 154, 159 (D.D.C. 2018) ("The Court reviews 'only those issues that the parties have raised in their objections.'" (quoting *Taylor v. District of Columbia*, 205 F. Supp. 3d 75, 79 (D.D.C. 2016)).

But even if the Court were to consider Plaintiffs' argument, it is meritless. The magistrate determined that because Plaintiffs' affiant is retired, "his opinion about the nature of current or future military assets is limited at best." R&R, at 16-17. Plaintiffs' *agreed* with that assessment, *see* Pls. Obj. at 22 (noting this conclusion is "sound"), but nonetheless contended that it was still appropriate to rely on the affiant's opinion because he "does not opine on current or future military assets, but about the posture of military assets eight years ago," *id.* This misses the point: the key question is whether release of the maps would damage national security *now*. And as DOD explained, "[e]ven with the passage of time, how DOD's forces are positioned at a particular time could provide potentially damaging and/or threatening insight to adversaries regarding DoD's interests, intent and potential operations." Malloy Decl., ¶ 11. For example, "[t]ensions with hostile foreign governments could rise depending on the disclosure of such positioning," or "[t]errorist organizations, violent extremist organizations, or hostile foreign governments could use transit time capability information to plan attacks within windows of perceived vulnerability." *Id.* The magistrate found there was "no reason to doubt" DOD's assessment, and that she "must give this explanation 'substantial weight.'" R&R, at 16 (quoting *ACLU*, 628 F.3d at 619).

Accordingly, the magistrate "f[ound] that the application of Exemption 1 to these maps is both 'logical' and 'plausible.'" *Id.* (quoting *Shapiro v. U.S. Dep't of Justice*, 893 F.3d 796, 799

(D.C. Cir. 2018)). Plaintiffs offer no reason (aside from their own say-so) to second-guess the military's considered judgment about how releasing detailed troop positions could endanger national security. *See, e.g.*, *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927 ("[Courts] have consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review."). The government is therefore entitled to summary judgment with respect to DOD's withholding of records pursuant to Exemption 1.

### III.   The Magistrate Correctly Concluded that the CIA Properly Withheld Information in CIA Inspector General Records

Plaintiffs next challenge the CIA's redactions and withholdings of information contained in CIA Inspector General records concerning Benghazi. The CIA redacted information in those records pursuant to FOIA Exemptions 1, 3, 6, and 7. R&R, at 18; *see* Clarke Decl., ECF No. 71-1, Ex. 8 (attaching the contested records). The magistrate noted that Plaintiffs had abandoned their challenge to (at least) Exemption 6 and determined that the CIA's withholdings pursuant to the other exemptions were appropriate. *See* R&R, at 18-23. Plaintiffs raise two objections to the magistrate's report: (1) that a statute requires the CIA to produce additional information, and (2) that some of the CIA's exemptions were inappropriate. Both contentions are meritless.

#### A.   The CIA Is Not Required To Disclose Additional Information Relating to the Subject Matter of the Inspector General Records

Plaintiffs contend that the CIA is statutorily required to produce information that reveals the "specific subject matter" of a complaint sent to the CIA Inspector General. Specifically, Plaintiffs rely on a provision of the CIA Information Act stating that "operational files" are "subject to search and review for information concerning . . . the specific subject matter of an investigation" by the CIA Inspector General. *See* 50 U.S.C. § 3141(c)(3)).[5] In Plaintiffs' view, this provision imposes an affirmative obligation to produce portions of records that describe the details of a CIA

---

[5] Plaintiffs' papers cite 50 U.S.C. § 431, but that section was transferred in 2013 and re-codified at 50 U.S.C. § 3141. *See* Supp. Shiner Decl., ¶ 12 & n.1, ECF No. 77-2.

Inspector General investigation, which the CIA's productions fail to satisfy. *See* Pls. Obj., at 26, 29-30.

As the magistrate correctly concluded, this argument "fails on multiple fronts." R&R, at 18. Most fundamentally, by focusing only on Section 3141(c), rather than the statute as a whole, Plaintiffs misapprehend how the statute works. The statute's primary purpose is to *exempt* certain types of records from various FOIA requirements *unless* those records fall in one of the statute's exemptions. Specifically, Section 3141(a) exempts "operational files" from the FOIA requirements of "publication or disclosure, or search or review in connection therewith." 50 U.S.C. § 3141(a). The provision on which Plaintiffs rely – Section 3141(c)(3) – provides a partial exception to that exemption, making operational files "subject to search and review" for information about the "specific subject matter" of an IG investigation.[6]

In other words, Section 3141(c)(3) does not impose an affirmative disclosure obligation; rather, it means that the CIA could not rely on Section 3141(a) to decline to search its operational files if the CIA believed those files contained responsive records concerning the "specific subject matter" of the IG investigation. *See, e.g.*, *Talbot v. U.S. Dep't of State*, 315 F. Supp. 3d 355, 369 (D.D.C. 2018); *Judicial Watch, Inc. v. CIA*, 310 F. Supp. 3d 34, 38 (D.D.C. 2018). But the CIA has *not* invoked Section 3141(a) to try to prevent the search for or disclosure of any information related to the IG records. *See* R&R, at 18. Indeed, as the CIA explained, the records at issue "do not meet th[e] definition of operational files," and "[t]hus, the CIA did not rely on the operational file exemption in its search, review, and release determinations regarding the IG Documents."

---

[6] The relevant text of 50 U.S.C. § 3141(c)(3) states:

> Notwithstanding subsection (a) of this section, exempted operational files shall continue to be subject to search and review for information concerning . . . the specific subject matter of an investigation by . . . the Office of Inspector General of the Central Intelligence Agency . . . for any impropriety, or violation of law, Executive Order, or Presidential directive, in the conduct of an intelligence activity.

Supp. Shiner Decl., ¶ 5, ECF No. 77-2. Accordingly, the exception contained in Section 3141(c)(3) has no relevance to CIA's redactions.

But even assuming for the moment that Section 3141(c) *did* require affirmative disclosure of the "specific subject matter" of the investigation, Plaintiffs' argument would still fail. As the magistrate recognized, "the subject matter of these records is apparent from the face of them." R&R, at 18. As discussed in the CIA's supplemental declaration, "the CIA conducted a page-by-page and line-by-line review, and released all reasonably segregable, non-exempt information, including the subject matter of the IG's investigation." Supp. Shiner Decl., ¶ 6. For example, Ms. Shiner points out that the CIA produced the emailed complaint, which contains the unredacted subject line of "Comments on the Benghazi Attacks." *Id.* ¶ 7. The complaint also "is introduced as addressing the concern that the Director of the CIA ('DCIA') had 'not been provided fulsome details regarding the events that took place during the 11/12 September attacks on the U.S. Mission (Consulate) in Benghazi and Benghazi Base."[7] *Id.*; *see* Clarke Decl., Ex. 8, ECF No. 71-1 (attaching this document at Bates 82).

### B.  Plaintiffs' Challenges to the CIA's Withholdings Are Meritless

Plaintiffs nonetheless contend that Section 3141(c)(3) requires the CIA to disclose specific details about the IG complaint. *See, e.g.*, Pls. Obj., at 26, 30. In doing so, Plaintiffs appear to suggest that not only does Section 3141(c) impose an affirmative disclosure obligation on the CIA, but that it also prevents CIA from redacting those details under the various FOIA exemptions. *See id.* at 26-30. If Plaintiffs did intend to make such an argument, it is meritless. Nothing in the text of Section 3141(c) suggests an intent to require the CIA to disclose material – including classified information – that would otherwise be exempt under FOIA. To the contrary, a different section of the statute says that if the CIA has improperly withheld requested files, a court shall require the

---

[7] Additional examples of nonredacted information concerning the subject matter of the IG records are discussed in the supplemental Shiner Declaration. *See* Supp. Shiner Decl., ¶ 7.

CIA "to search and review the [relevant records] and make such records, or portions thereof, available *in accordance with the provisions of [FOIA]*," indicating that wrongfully withheld files may still be redacted before production. 50 U.S.C. § 3141(f)(6) (emphasis added).

Plaintiffs also cursorily object to some aspects of the magistrate's detailed discussion upholding each of the CIA's assertions of FOIA Exemptions 1, 3, and 7. *See* Pls. Obj., at 29-30. But these challenges again fail for multiple reasons.

First, Plaintiffs appear to challenge the CIA's invocation of Exemption 7(D), which protects information relating to confidential sources. Plaintiffs have expressly waived their challenge to this exemption. *See* Pls. MSJ, at 3 n.10 ("Plaintiffs do not challenge . . . withholdings of confidential sources under Exemption 7(D)."); Jt. Status Report, ECF No. 81, ¶ 3 (similar). In any event, their argument would also fail on the merits. Specifically, Plaintiffs argue that because the whistleblower's identity will "remain classified," "the information sought could not lead to the whistleblower's identify." Pls. Obj., at 30. By this, Plaintiffs apparently mean that because the CIA will not officially disclose the whistleblower's name, there can be no harm in releasing other information. But Exemption 7(D) applies not only to a source's name, but also to "identifying information of the confidential source in addition to information from the confidential source." R&R, at 22 (citing *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1185 (D.C. Cir. 2011); *accord Sarno v. U.S. Dep't of Justice*, 278 F. Supp. 3d 112, 123 (D.D.C. 2017) ("Exemption 7(D) applies to all information that would tend to reveal a source's identity, and includes all information received from a confidential source[.]"). The CIA's declaration explained that the IG records contained this additional type of protectable information, *see* Shiner Decl., ¶ 54, ECF No. 68-5 ("These documents contain details that would tend to identify the parties by virtue of their position in the Agency, or their role in, or their knowledge of, the underlying events."), and Plaintiffs do not attempt to rebut the CIA's basis for protecting this identifying information. Consequently, Plaintiffs provide no basis to overcome the magistrate's determination that the CIA properly relied on Exemption 7(D). *See* R&R, at 22-23.

16

Second, Plaintiffs state – without argument or citation – that "the information does not relate to intelligence sources or methods." Pls. Obj., at 30. This unadorned statement need not delay the Court, as "[t]he Court need not consider unsupported, cursory arguments." *Berry Law PLLC v. Kraft Foods Grp., Inc.*, Case No. 13-475-RBW, 2013 WL 12061613, at *5 (Dec. 11, 2013). Indeed, it would be particularly inappropriate to consider this contention because Plaintiffs failed to raise it before the magistrate. *See* Pls. MSJ, at 36-40; *see also M.O. v. District of Columbia*, 20 F. Supp. 3d 31, 37 (D.D.C. 2013) ("In their objections, the parties may not present new issues or arguments to the district judge[.]"). In any case, the CIA's declaration provided a detailed justification of its withholdings regarding intelligence sources and methods, *see* Shiner Decl., ¶¶ 43-44, and the magistrate determined those redactions were appropriate, *see* R&R, at 19-22.

Because Plaintiffs have offered no reason to second-guess the magistrate's recommendation, the government is entitled to summary judgment regarding its withholdings in the IG records.

## IV. The Magistrate Correctly Concluded that Plaintiffs' Motion For Discovery Is Meritless

Plaintiffs moved to propound an interrogatory to DOD, claiming that they are entitled to discovery because they have identified DOD misrepresentations that establish bad faith. *See* Pls. Obj., at 16, 31. The magistrate correctly identified numerous reasons to deny this motion, *see* R&R, at 28-32, most of which Plaintiffs ignore. Accordingly, the Court should deny Plaintiffs' motion.

Plaintiffs' objections primarily base their request for discovery on purported DOD misrepresentations to the public. *See* Pls. Obj., at 16 (asserting that the DOD's "misrepresentation" concerning when DOD transmitted its initial orders "is evidence of bad faith"). But as discussed above, Plaintiffs have *not* identified any misrepresentation or bad faith. *See supra* at 5-7; *see also* R&R at 29-31 (concluding that Plaintiffs have not established bad faith). Without demonstrating bad faith, Plaintiffs are not entitled to discovery. *See Am. Oversight*, 401 F. Supp. 3d at 29 (stating that because the plaintiff failed to overcome the agency's presumption of good faith, "the Court must now deny" the motion for discovery).

But even if Plaintiffs could somehow raise a question about DOD's good faith, Plaintiffs still would not be entitled to discovery. That is so because Plaintiffs have failed to respond to numerous other reasons that the magistrate identified as foreclosing discovery. *See Brown*, 324 F. Supp. 3d at 159 ("The Court reviews 'only those issues that the parties have raised in their objections.'" (quoting *Taylor*, 205 F. Supp. 3d at 79)).

For example, even if Plaintiffs *had* shown that DOD officials lied about the timing of DOD's initial orders (and Plaintiffs make no such showing), the magistrate pointed out that a "mere allegation of agency misrepresentation" is insufficient to grant discovery. R&R, at 30 (quoting *Khatchadourian v. DIA*, 453 F. Supp. 3d 54, 79 (D.D.C. 2020)); *see also id.* at 31 (noting that Plaintiffs' allegations of bad faith were "particularly speculative" and lacking in "concrete evidence"). Plaintiffs' objections do not address this identified deficiency.

In addition, the magistrate correctly noted that "[d]iscovery is only appropriate if a FOIA plaintiff 'raises a sufficient question as to the agency's good faith *in searching for or processing documents*' or 'agency affidavits do not provide information specific enough to enable [the plaintiff] to challenge the procedures utilized.'" R&R, at 28 (quoting *Cole v. Rochford*, 285 F. Supp. 3d 73, 76 (D.D.C. 2018)) (emphasis added); *see In re Clinton*, 970 F.3d 357, 367-68 (D.C. Cir. 2020) (prohibiting discovery unrelated to a FOIA search and "point[ing] the District Court back to the sole, narrow inquiry before it," *i.e.* whether the agency conducted an appropriate search). Because Plaintiffs nowhere challenge DOD's affidavit or search procedures, they therefore are not entitled to discovery. *See* Pls. Obj., at 9-18; *see also* R&R, at 30 (noting that "Plaintiffs concede that they do not 'dispute the particulars of the DoD's search[.]'").

Moreover, "even where a FOIA plaintiff demonstrates bad faith, the scope of discovery is limited to 'the actions of the individuals who conducted the search.'" R&R, at 29 (quoting *In re Clinton*, 970 F.3d at 366). Because Plaintiffs' proposed interrogatory (set out in the margin)[8] has

---

[8] Plaintiff's proposed interrogatory reads as follows (*see* Pls. Obj., at 16):

State the time of all electronic, verbal, and written, communications, from 3:32 p.m., through 3:00 a.m., by and among all DOD components, the total number of

18

nothing to do with DOD's search process, the magistrate also recommended denying the motion on this ground. Plaintiffs' objections are silent on this point as well. *See* Pls. Obj., at 9-18.

Finally, the magistrate recommended denying the motion because the proposed interrogatory does nothing more than request the same documents that Plaintiffs seek in their FOIA requests, and "courts must not grant FOIA plaintiffs discovery that would be tantamount to granting the final relief sought." R&R, at 31 (quoting *Tax Analysts v. IRS*, 410 F.3d 715, 722 (D.C. Cir. 2005)). Once again, Plaintiffs fail to address this point. *See* Pls. Obj., at 9-18.

## CONCLUSION

For the foregoing reasons, the Court should (1) adopt the magistrate's recommendations that summary judgment should be granted to Defendants on all issues except regarding the records for which the FBI previously asserted a *Glomar* response, and (2) adopt the magistrate's recommendation that Plaintiffs' motion to propound an interrogatory to the Department of Defense should be denied.

DATED: November 23, 2020                    Respectfully submitted,

                                            JEFFREY BOSSERT CLARK
                                            Acting Assistant Attorney General

                                            ELIZABETH J. SHAPIRO
                                            Deputy Director
                                            Federal Programs Branch

                                            /s/ *Joshua C. Abbuhl*
                                            JOSHUA C. ABBUHL
                                            D.C. Bar No. 1044782
                                            Trial Attorney
                                            U.S. Department of Justice
                                            Civil Division, Federal Programs Branch
                                            1100 L Street, N.W.
                                            Washington, D.C. 20005
                                            Telephone: (202) 616-8366

---

individuals on the communication, their tittles and locations, and the substance of that communication. Include in your answer a description of all records, in any form, containing, reflecting, or otherwise corroborating, that communication.

Facsimile: (202) 616-8470
joshua.abbuhl@usdoj.gov
*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 23, 2020, a copy of the foregoing document was filed electronically via the Court's ECF system which sent notification of such filing to counsel of record.

/s/ *Joshua C. Abbuhl*
JOSHUA C. ABBUHL
D.C. Bar No. 1044782
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 616-8366
Facsimile: (202) 616-8470
joshua.abbuhl@usdoj.gov
*Counsel for Defendants*