**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ACCURACY IN MEDIA, *et al.*,

      Plaintiffs,

v.

U.S. DEPARTMENT OF DEFENSE, *et al.*,

      Defendants.

Civ. Action No. 14-1589
     (EGS/DAR)

**MEMORANDUM OPINION**

I.   **Introduction**

Plaintiffs Accuracy in Media, Inc.; Roger L. Aronoff;
Captain Larry W. Bailey, USN (Ret.); Lieutenant Colonel Kenneth
Benway, USA (Ret.); Colonel Richard F. Brauer, Jr., USA (Ret.);
Clare M. Lopez; Admiral James A. Lyons, Jr., USN (Ret.); and
Kevin Michael Shipp (collectively, "Plaintiffs") have made a
series of requests for information related to the 2012 attack on
the United States Embassy in Benghazi, Libya. *See generally* Am.
Compl., ECF No. 31.[1] They now sue U.S. Department of Defense and
its components ("DOD"); U.S. Department of State ("State

---

[1] When citing electronic filings throughout this Opinion, the
Court refers to the ECF page numbers, not the page numbers of
the filed documents.

1

Department"); U.S. Department of Justice ("DOJ") and its component the Federal Bureau of Investigation ("FBI"); and the Central Intelligence Agency ("CIA") (collectively, "Defendants") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to obtain that information. *See id.*

Pending before the Court are Defendants' Motion for Summary Judgment, *see* Defs.' Mot. for Summ. J., ECF No. 68; and Plaintiffs' Cross-Motion for Summary Judgment, *see* Pls.' Opp'n Defs.' Mot. Summ. J., Cross-Mot. for Summ. J., & Mot. Leave Propound Interrog. to DOD, ECF No. 71. Also pending before this Court is Plaintiffs' Motion for Leave to Propound Interrogatory to DOD. *See id.*; ECF No. 73. On January 7, 2019, the Court referred the case to a magistrate judge for a Report and Recommendation ("R. & R.") on these pending motions, and the case was randomly referred to Magistrate Judge Deborah A. Robinson. *See generally* Docket for Civ. Act. No. 14-1589. On August 27, 2020, Magistrate Judge Robinson issued her R. & R. recommending that the Court grant in part and deny in part Defendants' Motion for Summary Judgment, ECF No. 68; grant in part and deny in part Plaintiffs' Cross-Motion for Summary Judgment, ECF No. 71; and deny Plaintiffs' Motion for Leave to Propound Interrogatory to DOD, ECF No. 73. *See* R. & R., ECF No. 83 at 33.

Plaintiffs raise several objections to Magistrate Judge Robinson's R. & R. *See generally* Pls.' Obj. Magistrate Judge's R. & R. ("Pls.' Objs."), ECF No. 87. Upon careful consideration of the R. & R., the objections and opposition thereto, the applicable law, and the entire record herein, the Court hereby **ADOPTS** Magistrate Judge Robinson's R. & R., ECF No. 83; **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment, ECF No. 68; **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Cross-Motion for Summary Judgment, ECF No. 71; and **DENIES** Plaintiffs' Motion for Leave to Propound Interrogatory to DOD, ECF No. 73.

## II.  Background

### A. Factual

In 2014, Plaintiffs submitted over 40 separate FOIA requests to Defendants to obtain records related to the 2012 attack on the United States Embassy in Benghazi, Libya. *See generally* Am. Compl., ECF No. 31. Plaintiffs initiated this litigation on September 19, 2014 to resolve those FOIA requests, *see* Compl., ECF No. 1; and on March 2, 2018, the parties agreed to narrow the issues, *see* Joint Mot. to Amend Briefing Schedule, ECF No. 65.

The Court briefly recounts the FOIA requests that are currently at issue below.

**1. DOD**

Plaintiffs sent two letters to the Defense Intelligence Agency ("DIA") on April 7, 2014 and May 28, 2014. *See* Pls.' Counter-Statement of Material Facts as to Which There is a Genuine Issue ("SOMF"), ECF No. 71-5 ¶ 2. The first letter requested "records of (1) maps depicting all assets within fifteen hundred miles of Benghazi, Libya on September 11 and 12, 2012; (2) DOD assets that were pre-positioned off the coast of Tripoli on October 18, 2011; and (3) records in calendar year 2012 of the threat to U.S. personnel because of al-Quaida or Ansar al-Shariah or other belligerent build-up in Benghazi." *Id.* ¶ 31. The second letter requested "(1) OPREP-3 PINNACLE report(s) used to provide any DOD division with notification of, or information about, the September 11 and 12, 2012 attacks on the U.S. facilities in Benghazi, Libya"; and (2) "records of all directives, orders, and other communications regarding the readiness status of United States armed forces on the anniversary of the September 11, 2001 attacks on the World Trade Center" between July 1, 2012 and September 30, 2012. *Id.* ¶ 32.

The DIA conducted two searches of its Record Message Traffic database. *Id.* ¶ 8. The agency identified 148 responsive records, referred 92 records to other agencies for review, and determined that it would withhold 25 records in part and 30 records in full pursuant to various FOIA exemptions. *Id.* ¶¶ 33-

4

34. The DIA's process included an unfruitful search for the OPREP-3 PINNACLE reports, even though it "is not the unit responsible for issuing" the requested reports. *Id.* ¶¶ 6-7.

On March 31, 2014, Plaintiffs sent a FOIA request to the Navy, Marine Corps, and European Command ("EUCOM") for "orders to, NAVSTA Rota personnel to get ready to deploy, and if applicable, to deploy"; "orders [to an airborne special operations unit in Croatia] to deploy to NAS Sigonella"; and "orders to, NAS Sigonella personnel to get ready to deploy, and if applicable, to deploy." *Id.* ¶ 4. On October 1, 2014, Plaintiffs sent a FOIA request to the African Command ("AFRICOM") for "records of all communications generated in March of 2011, regarding Gaddafi's expressed interest in a truce and possible abdication and exile out of Libya." *Id.* ¶ 5.

These DOD units conducted extensive searches for responsive records. *See id.* ¶¶ 12-24. As relevant here, EUCOM produced a redacted copy of the Executive Order ("EXORD") from 3:00 A.M. September 12, 2012, which "is the initial written order directing EUCOM to execute an action in response to the September 11, 2012 attack on the United States mission in Benghazi, Libya." *See id.* ¶¶ 24-25. DOD also located 12 pages of maps responsive to Plaintiffs' April 7, 2014 request, but determined that it would withhold these records in full pursuant

to Executive Order 13,526 and FOIA Exemption 1. *See id.* ¶¶ 38-40.

### 2. CIA

On February 24, 2014 and October 1, 2014, Plaintiffs submitted two FOIA requests to the CIA. *Id.* ¶ 41. The CIA conducted extensive searches for responsive records. *See id.* ¶¶ 46-59. As relevant here, the CIA determined that several records from the Inspector General ("IG") were responsive to Plaintiffs' October 2014 request. *Id.* ¶ 55. The agency concluded that it could redact certain information in those IG files pursuant to Section 6 of the Central Intelligence Agency Act of 1949 and Section 102(A)(i)(1) of the National Security Act of 1947. *Id.* ¶ 57. It also withheld information pursuant to various FOIA exemptions. *See id.* ¶¶ 56-59.

### 3. FBI

On February 21, 2014, Plaintiffs requested from the FBI accounts from survivors about the September 11, 2012 attack in Benghazi, including the FBI's 302 Interview Reports. *See id.* ¶ 81. The FBI has never made these alleged reports public. *Id.* ¶ 83.

### B. Procedural

On May 10, 2018, Defendants moved for summary judgment. *See* Defs.' Mot. for Summ. J., ECF No. 68. Plaintiffs filed their opposition to Defendants' Motion for Summary Judgment as well as

their Cross-Motion for Summary Judgment on June 25, 2018. *See* Pls.' Opp'n Defs.' Mot. Summ. J., Cross-Mot. for Summ. J., & Mot. Leave Propound Interrog. to DOD, ECF No. 71. Defendants filed a brief in response on July 27, 2018, *see* Defs.' Reply Supp. Defs.' Mot. Summ. J. & Opp'n Pls.' Cross-Mot. Summ. J., ECF No. 77; and Plaintiffs filed their reply on August 27, 2018, *see* Pls.' Mem. Reply Defs.' Opp'n Pls.' Mot. Summ. J., ECF No. 80.

Plaintiffs also moved for leave to propound an interrogatory to DOD. *See* Pls.' Opp'n Defs.' Mot. Summ. J., Cross-Mot. for Summ. J., & Mot. Leave Propound Interrog. to DOD, ECF No. 71. Defendants filed a brief in opposition on July 9, 2018, *see* Defs.' Opp'n Pls.' Mot. Leave Propound Discovery Against Def. DOD, ECF No. 74; and Plaintiffs filed their reply on July 16, 2018, *see* Pls.' Reply Def. DOD Opp'n Mot. Leave Propound Interrog., ECF No. 75.

On January 7, 2019, the Court referred the case to a magistrate judge for a Report and Recommendation ("R. & R.") on these pending motions, and the case was randomly referred to Magistrate Judge Deborah A. Robinson. *See generally* Docket for Civ. Act. No. 14-1589. On August 27, 2020, Magistrate Judge Robinson issued her R. & R. recommending that the Court grant Defendants' Motion for Summary Judgment except as to the FBI's

*Glomar* response and deny Plaintiffs' motions except as to the *Glomar* issue. *See* R. & R., ECF No. 83 at 33.

On September 23, 2020, Plaintiffs filed objections to the R. & R. *See* Pl.'s Objs., ECF No. 87. Defendants filed a notice informing the Court that (1) it would not raise objections to the R. & R.; and (2) the FBI was withdrawing its *Glomar* response and had commenced a search for responsive records. *See* Defs.' Notice Regarding R. & R., ECF No. 86. Defendants also filed a brief in opposition to Plaintiffs' objections on November 23, 2020. *See* Defs.' Response Pls.' Objs. Magistrate's R. & R. ("Defs.' Opp'n"), ECF No. 91.

The motions are now ripe and ready for adjudication.

## III. Legal Standard

### A. Objections to a Magistrate Judge's Report and Recommendation

Pursuant to Federal Rule of Civil Procedure 72(b), a party may file specific written objections once a magistrate judge has entered a recommended disposition. Fed. R. Civ. P. 72(b)(1)-(2). A district court "may accept, reject, or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."). A district court "must determine de novo any part of the magistrate judge's disposition

that has been properly objected to." Fed. R. Civ. P. 72(b)(3).
"If, however, the party makes only conclusory or general
objections, or simply reiterates his original arguments, the
Court reviews the [R. & R.] only for clear error." *Houlahan v.
Brown*, 979 F. Supp. 2d 86, 88 (D.D.C. 2013) (citation and
internal quotation marks omitted). "Under the clearly erroneous
standard, the magistrate judge's decision is entitled to great
deference" and "is clearly erroneous only if on the entire
evidence the court is left with the definite and firm conviction
that a mistake has been committed." *Buie v. Dist. of Columbia*,
No. CV 16-1920 (CKK), 2019 WL 4345712, at *3 (D.D.C. Sept. 12,
2019) (citing *Graham v. Mukasey*, 608 F. Supp. 2d 50, 52 (D.D.C.
2009)) (internal quotation marks omitted).

Objections must "specifically identify the portions of the
proposed findings and recommendations to which objection is made
and the basis for the objection[s]." LCvR 72.3(b). "[O]bjections
which merely rehash an argument presented and considered by the
magistrate judge are not 'properly objected to' and are
therefore not entitled to de novo review." *Shurtleff v. EPA*, 991
F. Supp. 2d 1, 8 (D.D.C. 2013) (quoting *Morgan v. Astrue*, No.
08-2133, 2009 WL 3541001, at *3 (E.D. Pa. Oct. 30, 2009)). The
Court reviews Plaintiffs' objections de novo.

**B. Summary Judgment**

Federal Rule of Civil Procedure 56 provides that summary judgment motions must be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party bears the initial burden "of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. P. 56(c)(1). This burden "may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

A party opposing a summary judgment motion must show that a genuine factual issue exists by "(A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). Any factual assertions in the moving party's affidavits will be accepted as true unless the opposing party submits his own affidavits or other documentary evidence contradicting the assertion. *See Neal v. Kelly*, 963

10

F.2d 453, 456 (D.C. Cir. 1992). However, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).

### C. FOIA

FOIA is based on the recognition that an informed citizenry is "vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). It was enacted to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny," and it favors "full agency disclosure." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 360–61 (1976) (quoting *Rose v. Dep't of the Air Force*, 495 F.2d 261, 263 (2d Cir. 1974)).

Although FOIA is aimed toward "open[ness] . . . of government," *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 375 F. Supp. 3d 93, 97 (D.D.C. 2019); Congress acknowledged that "legitimate governmental and private interests could be harmed by release of certain types of information," *Critical Mass Energy Project v. Nuclear Regul. Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (citation and internal quotation marks omitted). As

such, pursuant to FOIA's nine exemptions, an agency may withhold certain requested information. 5 U.S.C. § 552(b)(1)-(9). However, "because FOIA establishes a strong presumption in favor of disclosure, requested material must be disclosed unless it falls squarely within one of the nine exemptions." *See Burka v. U.S. Dep't of Health & Hum. Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996) (citations omitted).

FOIA cases are usually and appropriately resolved on motions for summary judgment. *Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). An agency has the burden of demonstrating that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt from the Act's inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (citation and internal quotation marks omitted).

In reviewing a summary judgment motion in the FOIA context, the court must conduct a de novo review of the record, *see* 5 U.S.C. § 552(a)(4)(B); but may rely on agency declarations, *see SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Agency affidavits or declarations that are "relatively detailed and non-conclusory" are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id.* (citation and internal quotation marks omitted). The Court may award

12

summary judgment solely on the basis of information provided by the agency in declarations when the declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (citation and internal quotation marks omitted).

## IV.  Analysis

### A. Magistrate Judge Robinson Correctly Concluded that DOD Conducted an Adequate Search

To prevail on summary judgment, an agency must show "beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). It must demonstrate "that it made a good faith effort" to perform this search, "using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). If a FOIA requester challenges the adequacy of the agency's search, "the agency may meet its burden by providing 'a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were

searched." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 313–14 (D.C. Cir. 2003). These affidavits "are accorded a presumption of good faith." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

A court may not grant summary judgment to the agency "if the record raises substantial doubts regarding the agency's efforts, 'particularly in view of well[-]defined requests and positive indications of overlooked materials.'" *Heartland All. for Hum. Needs & Hum. Rts. v. U.S. Immigr. & Customs Enf't*, 406 F. Supp. 3d 90, 110 (D.D.C. 2019) (quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)). The burden is on the FOIA requester to produce "countervailing evidence" creating a genuine dispute of material fact, *id.* (quoting *Morley v. C.I.A.*, 508 F.3d 1108, 1116 (D.C. Cir. 2007)); and the requester "can only . . . rebut[]" the agency's affidavits "with clear evidence of bad faith," *Bigwood v. U.S. Dep't of Def.*, 132 F. Supp. 3d 124, 136 (D.D.C. 2015). "[T]he fact that a particular document was not found does not demonstrate the inadequacy of a search." *Boyd v. Crim. Div. of U.S. Dep't of Just.*, 475 F.3d 381, 391 (D.C. Cir. 2007). Similarly, "[m]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard Servs.*, 926 F.2d at 1201.

Here, Magistrate Judge Robinson determined that DOD is entitled to a presumption of good faith as to the adequacy of its search because "it submitted a 'reasonably detailed' declaration from Mark Herrington, the Associate Deputy General Counsel in the DoD Office of General Counsel" ("Mr. Herrington") that sufficiently "explain[ed] how the searches for responsive records were conducted." R. & R., ECF No. 83 at 9-10. Plaintiffs object to this conclusion, arguing that the agency's search was inadequate because: (1) DOD is not entitled to a presumption of good faith; and (2) DOD failed to produce certain responsive records. For the reasons explained below, the Court rejects both arguments and **ADOPTS** the R. & R. with respect to the adequacy of DOD's search.

### 1. Plaintiffs Have Not Overcome the Presumption of Good Faith Owed DOD

Plaintiffs raise two objections as to Magistrate Judge Robinson's conclusion that DOD's affidavit is entitled to a presumption of good faith. Plaintiffs first object that Magistrate Judge Robinson did not consider DOD's misrepresentations regarding the timing of the orders transmitted on September 11 and 12, 2012 after the attack on Benghazi. *See* Pls.' Objs., ECF No. 87 at 9-18. To support their objection, they cite testimony from former Secretary of Defense Leon Panetta ("former Secretary Panetta") to a House Select

Committee that the first order following the attack was
transmitted at 8:39 P.M. on September 11, 2012. *See* Pls.' Objs.,
ECF No. 87 at 9-18. Plaintiffs argue that these statements are
"evidence of bad faith" because the earliest order DOD produced
in this case was the 3:00 A.M. EXORD. *Id.* at 16.

Plaintiffs' objection fails because the evidence they cite
is entirely consistent with DOD's representations. In the
congressional testimony, former Secretary Panetta explained that
the National Military Command Center issued a formal order at
8:39 P.M. that was "the oral direction[] that commenced the
action for the task forces and the other units to move." Clarke
Decl., Ex. 3 ("Panetta Test."), ECF No. 71-1 at 15-16.
Similarly, in the affidavit DOD submitted, Mr. Herrington
explains that the 3:00 A.M. EXORD was "the first written order"
and that "the initial orders were conveyed verbally" earlier in
the night. Herrington Decl., ECF No. 68-4 ¶¶ 16-22. DOD also
submitted an accompanying exhibit that details the timeline of
orders even more clearly. Specifically, the timeline states that
former Secretary Panetta "provide[d] verbal authorization" for
various military units to prepare to deploy between 6:00 P.M.
and 8:00 P.M. on September 11, 2012. *See* Timeline of Dep't of
Def. Actions on September 11-12, 2012 ("Timeline"), ECF No. 87-1
at 1. It explains that "[d]uring this period, actions [we]re
verbally conveyed from the Pentagon to the affected Combatant

16

Commands in order to expedite movement of forces upon receipt of formal authorization." *Id.* The timeline further records that at 8:39 P.M., the National Military Command Center "transmit[ted] formal authorization" to move certain military units. *Id.* at 2.

Plaintiffs' objection thus fails to address the factual record in this case. The evidence from both parties supports DOD's claim that the order issued at 8:39 P.M. was a verbal order. Plaintiffs have not offered any evidence that this order was also reduced to writing that could have been produced here, and indeed, the evidence suggests that it never was. *Cf.* Panetta Test., ECF No. 71-1 at 15-16; Herrington Decl., ECF No. 68-4 ¶¶ 16-22. Because Plaintiffs have not pointed to any actual discrepancy between former Secretary Panetta's public statements and DOD's FOIA production, their argument about the 8:39 P.M. order cannot overcome the presumption of DOD's good faith.

Plaintiffs also object that Magistrate Judge Robinson did not appropriately consider certain other details in the Final Report of the Select Committee on the Events Surrounding the 2012 Terrorist Attack in Benghazi, H. Rep. No. 114-848 (2016). *See* Pls.' Objs., ECF No. 87 at 9-22. They explain that the following constitutes evidence of bad faith: former Secretary Panetta's "testimony [before Congress] conflicted with known facts"; "his actions [on the night of the attack] were contradictory"; he "professed initial ignorance of the

17

particulars of the siege"; and his "subordinates had assured him that forces were moving when no such order had been transmitted." *Id.* at 16.

The Court agrees with Magistrate Judge Robinson that this information "is of little significance." R. & R., ECF No. 83 at 14. Plaintiffs are attempting to cast doubt on DOD's search by questioning the reliability of former Secretary Panetta's testimony to a House Select Committee. *See* Pls.' Objs., ECF No. 87 at 9-22. Plaintiffs' misgivings about that testimony are, at most, "'[h]azy allegations of administrative malfeasance," which "may sound incriminating" but are not the "concrete, specific challenges to the sufficiency of [an agency's] search [required by the Court] in order to deny the agency summary judgment.'" *Am. Oversight v. U.S. Dep't of Just.*, 401 F. Supp. 3d 16, 37 (D.D.C. 2019) (quoting *Competitive Enter. Inst. v. U.S. Env't Prot. Agency*, 12 F. Supp. 3d 100, 111 (D.D.C. 2014)). Plaintiffs therefore have failed to meet their burden to produce "countervailing evidence" of DOD's alleged bad faith in conducting its FOIA search. *Heartland All. for Hum. Needs & Hum. Rts.*, 406 F. Supp. 3d at 110.

## 2. DOD's Search Was Adequate Even Though It Could Not Locate Certain Records

Plaintiffs also object to Magistrate Judge Robinson's conclusion that DOD's search was adequate because they claim

that she did not address four records DOD failed to locate. *See*
Pls.' Objs., ECF No. 87 at 22-25. The first three records are a
series of orders issued at 8:02 P.M., 8:39 P.M., and 11:00 P.M.
on September 11, 2012. *See id.* at 22-23. To support their
argument that these records must exist, Plaintiffs cite
questions and notes from the Chief Investigative Counsel of the
House Select Committee on the Benghazi attack and testimony from
former Secretary Panetta before that Committee. This evidence is
not persuasive. The Chief Investigative Counsel discussed only
that the orders were conveyed and never indicated that the three
orders were written down. *See* Pls.' Objs., ECF No. 87 at 23
n.29; *Id.* at 23 n.30. More pointedly, former Secretary Panetta
testified that these orders were "oral directions." Panetta
Test., ECF No. 71-1 at 16. Plaintiffs' repeated claims that
written records of these orders exist are "purely speculative"
and are insufficient to rebut DOD's affidavit. *SafeCard Servs.*,
926 F.2d at 1200 (citation omitted).

Plaintiffs also claim that DOD's search was inadequate
because the agency did not produce a "PINNACLE OPREP-3 Report."
*See* Pls.' Objs., ECF No. 87 at 23-25. In their Complaint, they
explain that they requested these reports from the DIA in their
May 28, 2014 FOIA request. *See* Compl., ECF No. 1 ¶¶ 19, 98. DOD
explained that, although the DIA "conducted [a search] in
response to this request," it was unable to locate the reports

because "the OPREP 3 report would come from [AFRICOM]," not the
DIA. Herrington Decl., ECF No. 68-4 ¶¶ 23-24. As Magistrate
Judge Robinson explained in her R. & R., Plaintiffs have not
provided any countervailing evidence to rebut this affidavit and
suggest that the DIA should have been able to locate the reports
among its records. *See* R. & R., ECF No. 83 at 12 n.6; *cf. Reps.
Comm. for Freedom of Press v. Fed. Bureau of Investigation*, 877
F.3d 399, 408 (D.C. Cir. 2017). Without any evidence to overcome
the presumption of good faith owed DOD, Plaintiffs'
"speculati[on] about the existence and discoverability of" the
PINNACLE OPREP-3 reports within the DIA fails. *SafeCard Servs.*,
926 F.2d at 1200 (citation omitted).

Accordingly, the Court rejects Plaintiffs' arguments;
**ADOPTS** this portion of the R. & R.; **GRANTS** Defendants' Motion
for Summary Judgment regarding the adequacy of DOD's search; and
**DENIES** Plaintiffs' Cross-Motion for Summary Judgment on the
issue.

### B. Magistrate Judge Robinson Correctly Concluded that DOD's Maps are Protected from Disclosure Under Exemption 1

Plaintiffs next challenge Magistrate Judge Robinson's
conclusion that DOD appropriately withheld in full 12 pages of
maps containing "the numbers and locations of ships, submarines,
response forces, and aircraft surrounding Benghazi, Libya"; the
"numbers of military personnel located in particular countries

20

during that time"; and "the transit time required for each available asset to reach Benghazi." R. & R., ECF No. 83 at 15-16 (quoting Malloy Decl., ECF No. 69-1 ¶ 9). For the reasons that follow, the Court rejects Plaintiffs' arguments and **ADOPTS** this portion of the R. & R.

FOIA Exemption 1 protects from disclosure information that is "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" and is "in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). The current executive order governing classification is Executive Order 13,526, *see* Exec. Order 13,526, 75 Fed. Reg. 707, 707 (Dec. 29, 2009); which authorizes information to be classified if certain conditions are met, *id.*; *see also Lindsey v. Fed. Bureau of Investigation*, 490 F. Supp. 3d 1, 11 (D.D.C. 2020).

The agency "bears the burden of proving the applicability of claimed exemptions." *Am. C.L. Union v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). In the national security context, a court "must accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record." *Id.* (quoting *Wolf v. C.I.A.*, 473 F.3d 370, 374 (D.C. Cir. 2007)). Courts "have consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial

review." *Ctr. for Nat. Sec. Studies v. DOJ*, 331 F.3d 918, 927 (D.C. Cir. 2003) (collecting cases).

Plaintiffs do not dispute that DOD classified the maps pursuant to Sections 1.4(a), 1.4(d), and 1.4(g) of Executive Order 13,526. *See generally* Pls.' Objs., ECF No. 87. They instead object that disclosure is appropriate because the information in DOD's records "implicate[s] no national security interest." *Id.* at 22. To support this argument, Plaintiffs cite an affidavit from retired Admiral Lyons. *See* Lyons Decl., ECF No. 71-2. The Court will not consider this evidence, though. The declarant "merely states his opinion, instead of any facts, about current national security risks," R. &. R., ECF No. 83 at 12 n.5 (citing Lyons Decl., ECF No. 71-2 ¶ 2 ("The sole purpose of this affidavit is to set forth my opinion.")); and affidavits consisting of "conclusory opinions" are insufficient on motions for summary judgment, *Waldie v. Schlesinger*, 509 F.2d 508, 510 (D.C. Cir. 1974).

However, even if it were appropriate for the Court to weigh this evidence, Plaintiffs' assertion would fail. Retired Admiral Lyons' "opinion about the nature of current or future military assets is limited at best" because he is currently retired and does not know DOD's current national security concerns. R. & R., ECF No. 83 at 16-17. DOD, by contrast, has explained that "[e]ven with the passage of time, how DOD's forces are

positioned at a particular time could provide potentially damaging and/or threatening insight to adversaries regarding DoD's interests, intent and potential operations." Malloy Decl., ECF No. 69-1 ¶ 11. Magistrate Judge Robinson found "no reason to doubt" DOD's assessment, which must be given "'substantial weight,'" R. & R., ECF No. 83 at 16 (quoting *Am. C.L. Union*, 628 F.3d at 619); and neither does the Court.

Plaintiffs also object to the R. & R. because the information they requested is already publicly available through a map published by the Congressional Research Service ("CRS") and another map they created. *See* Pls.' Objs., ECF No. 87 at 19-22. A FOIA requester may compel disclosure of classified information otherwise protected pursuant to Exemption 1 if he can establish the following: "(1) the information requested must be as specific as the information previously released; (2) the information requested must match the information previously disclosed; and (3) the information requested must already have been made public through an official and documented disclosure." *Am. C.L. Union*, 628 F.3d at 620-21 (citations omitted).

The maps Plaintiffs cite do not meet this standard because "the information requested" does not "match the information previously disclosed." *Id.* at 620.[2] The CRS map shows only the

---

[2] Plaintiffs also argue that disclosure is appropriate because "[t]he Congressional record on this issue is replete with

distances between Benghazi and other locations in the Mediterranean region. *See* Clarke Decl., ECF No. 71-1 at 55. Plaintiffs' map provides only their estimates of travel times to Benghazi from other locations in the Mediterranean region. *See id.* at 118. Neither map details all of the information Plaintiffs asked for in their FOIA requests, such as the official positions of the military assets or the types of assets at those locations. *See* Am. Compl., ECF No. 31 ¶¶ 30, 67, 75, 80, 95, 105. Controlling caselaw requires that the Court "insist[] on exactitude." *Am. C.L. Union*, 628 F.3d at 621. Thus, because there are substantive differences between the information requested and the information disclosed,[3] the Court agrees with Magistrate Judge Robinson's conclusion that disclosure is not required.

The Court therefore **ADOPTS** this portion of the R. & R.; **GRANTS** Defendants' Motion for Summary Judgment regarding the withholding of DOD's maps pursuant to FOIA Exemption 1; and **DENIES** Plaintiffs' Cross-Motion for Summary Judgment on the issue.

---

discussions of the assets, travel times, and available personnel and aircraft, and this information has been extensively reported by the media." Pls.' Objs., ECF No. 87 at 21. They provide no citations on this point, and so the Court rejects this argument.
[3] Additionally, Plaintiffs' map is not "an official and documented disclosure." *Am. C.L. Union*, 628 F.3d at 621.

### C. The CIA Appropriately Redacted Portions of the Inspector General's Files

Plaintiffs next object to Magistrate Judge Robinson's determination that the CIA appropriately redacted records related to a complaint sent to the CIA Inspector General David Buckley. *See* R. & R., ECF No. 83 at 18. For the reasons below, the Court **ADOPTS** the R. & R. as to the redaction of the CIA IG files.

FOIA Exemption 3 allows an agency to withhold records that are "specifically exempted from disclosure by statute" if the statute "(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3); *see also C.I.A. v. Sims*, 471 U.S. 159, 167 (1985). The CIA has invoked two exempting statutes to protect portions of the IG files from disclosure: Section 6 of the Central Intelligence Agency Act of 1949 (the "CIA Act") and Section 102A(i)(1) of the National Security Act of 1947. *See* R. & R., ECF No. 83 at 20; *Halperin v. CIA*, 629 F.2d 144, 147 (D.C. Cir. 1980) (explaining that both statutes are exempting statutes under Exemption 3).

Plaintiffs object to Magistrate Judge Robinson's application of the CIA Act here. They argue that the CIA must

produce redacted portions of the records because "'the specific subject matter of an investigation by . . . the Office of Inspector General of the Central Intelligence Agency,' unlike most other CIA operational records, is subject to the FOIA." Pls.' Objs., ECF No. 87 at 26 (quoting 50 U.S.C. § 3141(c)(3)). This argument is unconvincing because the CIA never invoked Section 3141 to protect any part of the IG files from disclosure. *See* Shiner Decl., ECF No. 68-5 ¶¶ 41, 43. Indeed, the CIA clarified in its response to Plaintiffs' Cross-Motion for Summary Judgment that it has never relied on Section 3141 to try to prevent disclosure of the IG files. *See* Shiner Suppl. Decl., ECF No. 77-2 ¶¶ 4-5; Defs.' Opp'n, ECF No. 91 at 19.

Plaintiffs also object in passing to the following: "that 'the subject matter of these records is apparent from the face of them,' that disclosure of the specifics of the wrongdoing alleged could lead to the disclosure of the whistleblower's identity, and that nondisclosure is justified as the information 'relates to intelligence sources and methods.'" Pls.' Objs., ECF No. 87 at 29-30 (footnotes omitted). The Court need not consider these objections as Plaintiffs have not made any argument or cited any law to support these bare points. *See Berry L. PLLC v. Kraft Foods Grp., Inc.*, No. CV 13-0475 (RBW), 2013 WL 12061613, at *5 (D.D.C. Dec. 11, 2013) ("The Court need not consider unsupported, cursory arguments.").

Accordingly, the Court **ADOPTS** this portion of the R. & R.; **GRANTS** Defendants' Motion for Summary Judgment as to the withholding of the CIA IG records; and **DENIES** Plaintiffs' Cross-Motion for Summary Judgment on the issue.

### D. The Issue of the FBI's *Glomar* Response is Moot

Magistrate Judge Robinson recommended denying Defendants' Motion for Summary Judgment with respect to the FBI's *Glomar* response because the agency failed to provide a "logical" or "plausible" explanation as to why "acknowledging the existence of any 302 report would necessarily reveal the existence of specific 302 reports." R. & R., ECF No. 83 at 25-26; *see Am. C.L. Union v. C.I.A.*, 710 F.3d 422, 427 (D.C. Cir. 2013) (citations omitted). In lieu of raising objections to the R. & R., Defendants filed a Notice stating that that the FBI "no longer intends to maintain its prior *Glomar* assertion" and will now "conduct a search for responsive records that would have been covered by the *Glomar* assertion." Defs.' Notice Regarding R. & R., ECF No. 86 at 1.

Because of the FBI's changed position, the Court need not evaluate the R. & R.'s recommendation as to the *Glomar* response. *See Edelman v. Sec. & Exch. Comm'n*, 172 F. Supp. 3d 133, 156 (D.D.C. 2016) (determining that the court need not resolve the appropriateness of an agency's *Glomar* response after the agency withdrew its *Glomar* response and searched for responsive

records). Accordingly, the Court **DENIES** Defendants' Motion for Summary Judgment regarding the FBI's *Glomar* response as moot.

### E. Plaintiffs Have Not Met the Standard for Discovery

"It is well established that discovery is rare in FOIA cases." *Cole v. Rochford*, 285 F. Supp. 3d 73, 76 (D.D.C. 2018). Courts permit discovery in these cases "only in exceptional circumstances," *id.*: "when [the FOIA] plaintiff has made a sufficient showing that the agency acted in bad faith, has raised a sufficient question as to the agency's good faith, or when a factual dispute exists and the plaintiff has called the affidavits submitted by the government into question," *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, No. CIV. 05-2078(EGS), 2006 WL 1518964, at *3 (D.D.C. June 1, 2006) (citations omitted).

Plaintiffs object to Magistrate Judge Robinson's recommendation that the Court deny their Rule 56(d) request to propound an interrogatory to DOD. *See* Pls.' Objs., ECF No. 87 at 16, 31. Specifically, they claim that DOD made certain misrepresentations to Congress and the public, which establish the agency's bad faith and therefore support their discovery request. *Id.* at 9-16; 31. However, as the Court explained *supra*, Plaintiffs have not demonstrated that DOD acted in bad faith or otherwise raised a question about DOD's good faith in responding to the FOIA requests at issue in this case. *See Citizens for*

*Resp. & Ethics in Wash.*, 2006 WL 1518964, at *3. This failure is fatal to their discovery request. *See Am. Oversight v. U.S. Dep't of Just.*, 401 F. Supp. 3d 16, 29 (D.D.C. 2019); *Cole*, 285 F. Supp. at 76.

The Court therefore **ADOPTS** this portion of the R. & R. and **DENIES** Plaintiffs' Rule 56(d) request.

**V.   Conclusion**

For the foregoing reasons, the Court **ADOPTS** Magistrate Judge Robinson's R. & R., ECF No. 83; **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment, ECF No. 68; **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Cross-Motion for Summary Judgment, ECF No. 71; and **DENIES** Plaintiffs' Motion for Leave to Propound Interrogatory to DOD, ECF No. 73.

An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **November 28, 2022**