## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ACCURACY IN MEDIA, INC., *et al.*,

                *Plaintiffs*,

    v.

UNITED STATES DEPARTMENT OF
DEFENSE, *et al.*,

                *Defendants*.

Civil Action No. 14-1589 (LLA)

### MEMORANDUM OPINION

This matter is before the court on a Motion for Summary Judgment by Defendant Federal Bureau of Investigation ("FBI") and a Cross-Motion for Summary Judgment by Plaintiffs, Accuracy in Media, Inc., and seven individuals.[1]  ECF Nos. 97 & 98.  Plaintiffs claim that the government violated the Freedom of Information Act ("FOIA") by unlawfully withholding certain records pertaining to the September 11, 2012 attacks on the U.S. Embassy in Benghazi, Libya.  *See generally* ECF No. 31.  Upon consideration of the motions and supporting documentation, the court will grant the FBI's Motion for Summary Judgment and deny Plaintiffs' Cross-Motion for Summary Judgment.

### I.        Background

In 2014, Plaintiffs submitted over forty FOIA requests to the Defendants, which are the U.S. Department of Defense, the U.S. Department of State ("State Department"), the FBI, and the Central Intelligence Agency ("CIA").  *See generally* ECF No. 31.  Over the course of this

---

[1] The individual Plaintiffs are Roger L. Aronoff, Captain Larry W. Bailey (Ret.), Lieutenant Colonel Kenneth Benway (Ret.), Colonel Richard F. Brauer, Jr. (Ret.), Claire M. Lopez, Admiral James A. Lyons, Jr. (Ret.), and Kevin Michael Shipp.

litigation, the parties resolved many of the requests at issue without court intervention.  ECF No. 83, at 2.  Only one issue remains in dispute: Plaintiffs' request for certain FBI interview reports—referred to as FD-302s—and corresponding handwritten notes of interviews conducted with United States personnel who were present during the attacks.  ECF No. 31 ¶ 126 (8).

The FBI initially provided a *Glomar* response to Plaintiffs' request for these records, neither confirming nor denying the existence of such records.  ECF No. 83, at 23-24; *see Roth v. U.S. Dep't of Just.*, 642 F.3d 1161, 1171 (D.C. Cir. 2011) ("In a [*Glomar*] response the government neither confirms nor denies the existence of the requested records.").  In 2018, the parties cross-moved for summary judgment on this issue, among others, and the case was assigned to Magistrate Judge Deborah Robinson.  *See* Jan. 7, 2019 Minute Order.  Judge Robinson recommended that summary judgment be granted to Defendants on all issues, except for the FBI's *Glomar* response.  ECF No. 83, at 33.  Shortly thereafter, the FBI withdrew its *Glomar* response and informed the court that it would search for and process the sought-after records.  ECF No. 86, at 1.

To locate pertinent records, the FBI conducted index searches of its case management systems using key terms related to the Benghazi attacks.  ECF No. 97-3 ¶¶ 20-22.  The FBI informed Plaintiffs that it had compiled responsive records but, after consulting with the State Department and the CIA, it had determined that the records were protected in full pursuant to FOIA exemptions 1, 3, 5, 6, 7(A), 7(C), 7(E), and 7(F).  ECF No. 97-2 ¶ 8.

The court later adopted Judge Robinson's recommendations on the other outstanding issues, but it found Defendants' motion for summary judgment with respect to the *Glomar* response moot in light of the FBI's change of position.  ECF No. 92, at 20, 24, 27-28.  The parties informed the court that Plaintiffs intended to challenge the FBI's new justifications for withholding

the FD-302 interview reports, and the parties subsequently filed cross-motions for summary judgment.  *See* ECF No. 94 at 2; Feb. 22, 2023 Minute Order; ECF Nos. 97 & 98.

## II.      Legal Standard

The purpose of FOIA is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Am. C.L. Union v. U.S. Dep't of Just.*, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)).   Congress nonetheless included nine exemptions to disclosure that "are intended 'to balance the public's interest in governmental transparency against the legitimate governmental and private interests [that] could be harmed by release of certain types of information.'" *Tipograph v. U.S. Dep't of Just.*, 83 F. Supp. 3d 234, 238 (D.D.C. 2015) (quoting *United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 559 (D.C. Cir. 2010)).

Most FOIA cases are appropriately resolved on motions for summary judgment. *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).  A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The agency invoking a FOIA exemption bears the burden of demonstrating it applies. *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989).  Summary judgment may be awarded to the agency if it can demonstrate that no material facts are in dispute, that it conducted an adequate search for responsive records, and that each record has either been produced or is exempt from disclosure. *Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 59 F. Supp. 3d 184, 189 (D.D.C. 2014).  "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with specific facts demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Manna v. U.S.*

3

*Dep't of Just.*, 106 F. Supp. 3d 16, 18 (D.D.C. 2015) (quoting *Span v. U.S. Dep't of Just.*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010)).

In assessing a motion for summary judgment, the court affords "substantial weight" to an agency affidavit that is detailed and non-conclusory. *Jud. Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 940-41 (D.C. Cir. 2013) (quoting *Am. C.L. Union v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011)).   The affiant must describe "the documents and the justifications for nondisclosure with reasonably specific detail [and] demonstrate that the information withheld logically falls within the claimed exemption," and the court will credit such statements if they "are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Manning v. U.S. Dep't of Just.*, 234 F. Supp. 3d 26, 32 (D.D.C. 2017) (quoting *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).   "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. Cent. Intel. Agency*, 473 F.3d 370, 374-75 (D.C. Cir. 2007).

### III.   Discussion

FBI invokes multiple FOIA exemptions to justify its withholding, but this court need only address one: Exemption 7(A), which allows an agency to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to interfere with enforcement proceedings."   5 U.S.C. § 552(b)(7)(A).   The court concludes that the FD-302s were properly withheld pursuant to Exemption 7(A), thereby warranting summary judgment for the FBI without the need to address the other grounds raised.   *See Am. C.L. Union*, 628 F.3d at 619 n.2.

"Exemption 7(A) reflects the Congress's recognition that 'law enforcement agencies ha[ve] legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it [comes] time to present their case.'" *Citizens*

*for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 746 F.3d 1082, 1096 (D.C. Cir. 2014) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978)).  When litigation itself threatens to reveal FOIA-exempt information, an agency may provide a categorical description of the withheld information rather than a document-by-document justification for exemption.  *Id.* at 1089-90.  Categorical treatment is appropriate under Exemption 7(A) when the general description supports an inference that the withheld category has a rational link to the agency's alleged interference.  *See id.* at 1088-89.

"[A]n ongoing criminal investigation typically triggers Exemption 7(A)."  *Id.* at 1098.  "[T]o withhold documents pursuant to Exemption 7(A), an agency must show that they were compiled for law enforcement purposes and that their disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated."  *Mapother v. U.S. Dep't of Just.*, 3 F.3d 1533, 1540 (D.C. Cir. 1993) (emphasis omitted).

Plaintiffs do not appear to contest that the FBI compiled the records for law enforcement purposes or that the Benghazi investigation remains ongoing, so the court will only briefly touch on these requirements.  The FBI submitted several declarations in support of its motion, of which two are particularly relevant to these issues: the declaration of Michael G. Seidel, Section Chief of the Record/Information Dissemination Section, Information Management Division of the FBI, ECF 97-2; and the declaration of Timothy J. Kootz, Director of the Office of Information Programs and Services of the State Department, ECF 97-5.  Mr. Seidel averred that the FD-302s and interview notes were compiled for law enforcement purposes.  ECF No. 97-2 ¶ 10.  He also stated that the investigation of the Benghazi attacks "remains ongoing."  *Id.* ¶ 13.  Specifically, he explained that "[t]he FBI continues to pursue all logical leads to identify and investigate those individuals who helped perpetuate, assist, or otherwise support the 2012 attack."  *Id.* ¶ 13.

Mr. Kootz similarly testified that the relevant FD-302s were compiled during the FBI's investigation of the attacks in Benghazi and that the investigation is "ongoing." ECF No. 97-5 ¶¶ 25-26. Plaintiffs present no evidence to contradict these statements, nor do they point to anything in the record suggesting bad faith on the part of the government. Accordingly, the court credits the government's declarations, and it finds that the records were compiled for law enforcement purposes and that the relevant investigation is ongoing. *Manning*, 234 F. Supp. 3d at 33.

That leaves the question whether disclosure of the records "could reasonably be expected to interfere with" the ongoing investigation. *Mapother*, 3 F.3d at 1540. Plaintiffs raise two main arguments against the FBI's claim of interference. First, they argue that the FBI has not sufficiently explained how the specific information they seek—those portions of the FD-302s that describe a purported order to security forces at the embassy to "stand down"—could interfere with an ongoing investigation. ECF No. 98, at 16-17; ECF No. 102, at 4-5. Second, they suggest that public statements made by security forces present at the attack undercut the FBI's arguments and require disclosure because the underlying information is already public. ECF No. 98, at 12-14; ECF No. 102, at 5-6. The court is not persuaded.

*Sufficiency of the explanation.* As noted, an agency may invoke Exemption 7(A) on a categorical basis when "the FOIA litigation process threatens to reveal 'the very information the agency hopes to protect.'" *Citizens for Resp. & Ethics in Wash.*, 746 F.3d at 1088 (quoting *Am. C.L. Union v. Cent. Intel. Agency*, 710 F.3d 422, 432 (D.C. Cir. 2013)); *see Robbins Tire & Rubber Co.*, 437 U.S. at 224 ("[L]aw enforcement agencies ha[ve] legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it [comes] time to present their case."). "Categorical withholding is often appropriate under

Exemption 7(A)." *Citizens for Resp. & Ethics in Wash.*, 746 F.3d at 1098.  It is permissible where the agency (1) defines its categories functionally, (2) conducts a document-by-document review to sort information into the proper category, and (3) explains how disclosure will interfere such that the court can "trace a rational link between the nature of the document and the alleged likely interference." *Crooker v. Bureau of Alcohol, Tobacco, & Firearms*, 789 F.2d 64, 67 (D.C. Cir. 1986); *Citizens for Resp. & Ethics in Wash.*, 746 F.3d at 1098.

The FBI properly invoked categorical withholding here.   It defined its category functionally, characterizing the FD-302s as "Evidentiary/Investigative Materials."  ECF No. 97-2 ¶ 17.  Mr. Seidel explained that this category encompasses records gathered through witness interviews, and he further stated that the search was conducted on a document-by-document basis, and each covered record was placed within the functional category.  *Id.* ¶¶ 16-17.

The question, then, is not whether the disclosure of any specific portions of the FD-302s would interfere with the ongoing criminal investigation, but whether the FBI sufficiently explained how categorical disclosure would interfere with the investigation.  It did.  Mr. Seidel explained that the FD-302s "document the FBI's investigation of the potential crimes and/or possible threats to national security" related to the Benghazi attacks.  *Id.* ¶ 10.   He further explained that a document-by-document description would "undermine" the FBI investigation because disclosure could reveal "leads the FBI is pursuing and the scope of the investigation." *Id.* ¶ 15.  This, in turn, could enable the suspected "groups or individuals to change their behavior and avoid scrutiny." *Id.*  More specifically, the FBI predicts that the disclosure of persons "of investigative interest" in the matter could lead to witness tampering and the destruction of evidence.  *Id.* ¶ 14.

"Such predictive judgments of harm are entitled to deference . . . especially where, as here, the investigation concerns matters of national security." *Manning*, 234 F. Supp. 3d at 36; *see Ctr.*

*for Nat. Sec. Stud. v. U.S. Dep't of Just.*, 331 F.3d 918, 927 (D.C. Cir. 2003) (stating that the Supreme Court and the D.C. Circuit "have expressly recognized the propriety of deference to the executive in the context of FOIA claims which implicate national security").  In light of the FBI's predictions, this is not an edge case.  The interference that the agency warns of—potential witness tampering, destruction of evidence, and revelation of the scope of investigation—is within the heartland of exemption 7(A).  *See Manning*, 234 F. Supp. 3d at 36 (finding sufficient interference under Exemption 7(A) where government declarations stated that the release of information would reveal the focus and scope of the investigation, allowing suspects to destroy evidence or alter their behavior); *Leopold v. U.S. Dep't of Just.*, 301 F. Supp. 3d 13, 26 (D.D.C. 2018) (finding sufficient interference under Exemption 7(A) where a "precise description of the records being withheld would 'reveal non-public information about the targets and scope of the investigation' which 'could reasonably be expected to' interfere with it"); *Tipograph*, 83 F. Supp. 3d at 239 (explaining that Exemption 7(A) protects against "chilling and intimidation of witnesses, and revelation of the scope and nature of the Government's investigation").

Because there is a "rational link" between the disclosure of the FD-302s and the threat of interference, the government's categorical approach is appropriate.  *Crooker*, 789 F.2d at 67; *Tipograph*, 83 F. Supp. 3d at 240 ("Because this explanation describes the nature of the information contained in the records, rather than merely the nature of the records themselves, it permits the Court to infer a rational link between the records and an investigative purpose.").

*Public disclosure*.  Plaintiffs also argue that some of the information contained within the FD-302s has already been made public, thus undercutting the FBI's warnings of potential

interference.[2]  ECF No. 98, at 12-14; ECF No. 102, at 5-6.  Specifically, they allege that the FD-302s "reflect the accounts of Mark Geist, Kris Paronto, and John Tiegen," all of which appear in a book and a movie, and some of which are detailed in Fox News interviews.[3]  ECF No. 102, at 6.  It is undisputed that these three individuals were not FBI employees.  ECF No. 100, at 12-13; ECF No. 102, at 3.

Plaintiffs seemingly invoke the doctrine of "official acknowledgment," which requires an agency to disclose information "even over an agency's otherwise valid exemption claim."  *Wolf*, 473 F.3d at 378.  Official acknowledgement applies when "the information requested [is] as specific as the information previously released," "the information requested [matches] the information previously disclosed," and the information has already "been made public through an official and documented disclosure."  *Id.* (quoting *Fitzgibbon v. Cent. Intel. Agency*, 911 F.2d 755, 765 (D.C. Cir. 1990)).  Plaintiffs bear the burden of showing the doctrine applies.  *Buzzfeed, Inc. v. Fed. Bureau of Investigation*, 613 F. Supp. 3d 453, 472 (D.D.C. 2020) (quoting *Mobley v. Cent. Intel. Agency*, 806 F. 3d 568, 583 (D.C. Cir. 2015)).

Plaintiffs have not established the conditions required to invoke official acknowledgement.  Although Mr. Seidel acknowledged that "some information pertaining to the Benghazi attacks has been made public," he clarified that the "FBI has not disclosed the identities of the individuals" who were interviewed as part of the government's investigation.  ECF No. 97-2 ¶ 14.  Nor has the FBI revealed the "focus and content" of the FD-302 interview reports.  *Id.*  Thus, the information

---

[2] In their initial cross-motion, Plaintiffs suggested that State Department's August 2018 release of video clips showing the attack also undercut the FBI's assertion of interference.  ECF No. 98, at 16.  They abandon this argument in their reply, so the court does not address it.  ECF No. 102, at 6 ("Plaintiffs agree [that] [t]he surveillance footage is irrelevant.").

[3] The book is titled *13 Hours: The Inside Account of What Really Happened in Benghazi*, the movie is titled *13 Hours: The Secret Soldiers of Benghazi*.  ECF No. 102, at 6.

requested does not match what the government has previously disclosed.  *Wolf*, 473 F.3d at 378.
It does not matter that three members of the security team—Mark Geist, Kris Paronto, and John
Tiegen—have publicized their recounting of events.  These are statements by third parties, not the
"official and documented disclosure" required by the official acknowledgement doctrine.  *Id.*
(quoting *Fitzgibbon*, 911 F.2d at 765); *see Frugone v. Cent. Intel. Agency*, 169 F.3d 772, 774 (D.C.
Cir. 1999) (explaining that the court "do[es] not deem 'official' a disclosure made by someone
other than the agency from which the information is being sought").  Finally, at the core, public
statements by third parties about the attacks do not undercut the FBI's invocation of
Exemption 7(A) because the FBI does not seek to obscure the underlying events—instead, it seeks
to protect its investigation and future law enforcement proceedings.  ECF No. 97-2 ¶¶ 14-15; *see*
*Leopold*, 301 F. Supp. 3d at 26 (D.D.C. 2018).  Public accounts of the attacks thus do not
undermine the FBI's concerns of interference with an open investigation.

## IV.    Conclusion

For the foregoing reasons, the court will issue a contemporaneous order granting the FBI's
Renewed Motion for Summary Judgment, ECF No. 97, and denying Plaintiffs' Cross-Motion for
Summary Judgment, ECF No. 98.

<div style="margin-left:50%">

/s/ Loren L. AliKhan
LOREN L. ALIKHAN
United States District Judge

</div>

Date: April 26, 2024